BRITA WASSER–FILTER–SYSTEME GMBH and The Brita Products Company, Plaintiffs,

v.

RECOVERY ENGINEERING, INC., Signature Brands, Inc. f.n.a. Health O Meter, Inc., and Culligan International Company, Defendants.

No. 97 C 3915.

United States District Court, N.D. Illinois, Eastern Division.

March 4, 1999.

Sidney Katz, Robert B. Breisblatt And Leonard Friedman Of Welsh And Katz, Ltd., Chicago, Il, For Brita.

Alan G. Carlson, Joseph M. Kastelic of Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, MN, for Recovery Engineering Inc.

Charles B. Lyon, John S. Cipolla of Calfee, Halter & Griswold LLP, Cleveland, OH, for Signature Brands.

Lawrence J. Crain, Roger D. Greer, James K. Folker of Greer, Burns & Crain, Ltd., Chicago, IL, for Culligan Intern.

## MEMORANDUM OPINION AND ORDER

KOCORAS, District Judge.

This matter is before the Court on cross motions for summary judgment. For the following reasons, the plaintiffs' motions are denied and the defendants' motions are granted.

## BACKGROUND

Plaintiff Brita Wasser–Filter–Systeme ("Brita") owns the rights to United States Patent Number 4,969,996 ("the '996 patent"). Brita brought a patent infringement suit against Recovery Engineering, Inc. ("Recovery"), Signature Brands, Inc. ("Signature"), and Culligan International Company ("Culligan"). The '996 patent is entitled "Water Purification Device with an Intake Funnel" and contains nine claims. The abstract for the patent describes a water purification device having an intake funnel, a sleeve which is sealingly connected to the funnel, a filter cover, and a filter bottom in which a granulate-type filter agent can be introduced.

According to the '996 patent, prior art devices of this type allegedly encountered interruption of water flow through the filter cartridge because of air or gas bubbles being entrained at the bottom of the cartridge. To address this water flow prob-

lem, the '996 patent provides a filter cartridge having an "air collecting space" for collecting accumulated gas from the filter outlets and diverting this gas away from the bottom of the cartridge. The gas is then directed up a chimney-like half-tube and vented out a hole in the sleeve.

In the present lawsuit, Brita asserts claims of patent infringement against Defendants Recovery Engineering, Inc. ("Recovery"), Signature Brands, Inc. ("Signature"), and Culligan International Company ("Culligan"). Each of the Defendants produces their own water filtration system device. Brita alleges that all three of these filtration devices infringe the '996 patent.

Claim 1 is the '996 patent's only independent claim. Each of the parties' disputes involves Claim 1 of the patent, or language in a dependent claim that matches language in Claim 1. This claim reads as follows:

> A water purification device comprising an intake funnel, a sleeve wherein said sleeve is sealingly connected to said funnel at an upper end of said sleeve, said sleeve further having an opening formed therein, an insert having approximately cylindrical side walls, a filter cover and a filter bottom for accommodating a granulate filter agent therein with means defining an air collecting space, located in at least a portion of the filter bottom, said means defining the air collecting space extending upwardly at least partially towards the side wall and to the opening in said sleeve, with said filter bottom having opening means to allow the passage of filtrate therethrough, and with said filter cover having opening means whereby fluid can be passed into the insert.

'996 patent, Claim 1.

The Court conducted a Markman hearing on July 8, 1998, and issued a written opinion interpreting that claim on August 7, 1998. *See Brita Wasser–Filter–Systeme GmbH v. Recovery Engineering, Inc.*, 1998 WL 473467 (N.D.Ill. Aug. 7, 1998). The Court agreed with the parties that no extrinsic evidence was necessary to construe the disputed terms in the '996 patent. In that opinion, the Court made several interpretations.

1. "Means defining an air collecting space"

The Court determined that the claim term "means defining an air collecting space" is a means-plus-function element and thus must be construed under 35 U.S.C. § 112, ¶ 6. The function disclosed for this element is a space which gathers and then removes air bubbles from the filter bottom. The corresponding structure for this element requires a space with both a vertical and horizontal component, though these components are not restricted by the precise structures disclosed by the preferred embodiment.

2. "Sleeve" and "an opening formed therein"

The Court found that the word "sleeve" in Claim 1 means "a single continuous structure with two open ends that fits over something else." The "opening formed therein" is limited to a single opening which is a permanent part of the sleeve.

3. "to the opening in said sleeve"

Finally, after examining the claim language and the file history, this Court determined that the chimney portion of the air collecting space must reach the elevation of the sleeve opening, and not merely extend in a direction toward the opening.

## LEGAL STANDARD

The purpose of summary judgment is to avoid an unnecessary trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Summary judgment is as

appropriate in a patent case as in any other case. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 835 (Fed.Cir.1984).

The burden is initially on the movant to identify the portions of the pleadings, depositions, and other evidence that the movant believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-movant bears the burden of proof at trial, the movant can discharge his burden by pointing out to the district court that there is "an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the movant meets its burden, the non-movant must go beyond the pleadings and introduce affidavits or identify portions of the evidence of record showing that there is a genuine issue of disputed fact requiring trial. *See id.* at 324, 106 S.Ct. 2548.

■ The plaintiff in a patent infringement case bears the burden of proving that every limitation of one or more claims is met by the accused device, either literally or by the doctrine of equivalents. *See Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1532–33 (Fed.Cir. 1987). The standard of proof is a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.,* 859 F.2d 878, 889 (Fed.Cir.1988). To avoid summary judgment of non-infringement, the plaintiff must show that "the evidence is such that a reasonable jury could return a verdict for the [plaintiff]." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even under the doctrine of equivalents, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgement." *See Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, n. 8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). It is with these principles in mind that we turn to the issues in this case.

## DISCUSSION

Determining infringement involves two steps. First, the Court must construe the asserted claims as a matter of law to ascertain their meaning and scope. *See Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1354 (Fed.Cir.1998). Second, the claims as construed are compared to the allegedly infringing device. *See id.* In order for a device to infringe a claim, each claim limitation must be present in the accused device either literally or equivalently. *See Dawn Equipment Co. v. Kentucky Farms, Inc.,* 140 F.3d 1009, 1014 (Fed.Cir.1998) (citing *Sofamor Danek Group, Inc. v. De-Puy–Motech, Inc.,* 74 F.3d 1216, 1220 (Fed.Cir.1996)). "The essential inquiry is whether 'the accused product or process contains elements identical or equivalent to each claimed element of the patented invention.'" *Litton Systems Inc. v. Honeywell Inc.,* 140 F.3d 1449, 1454 (Fed.Cir. 1998) (citing *Warner–Jenkinson,* 117 S.Ct. at 1054).

■ A patent may be infringed either literally or under the doctrine of equivalents. A device literally infringes a patent claim only if every limitation of the claim is present in the device. *See Perkin–Elmer,* 822 F.2d at 1532. "[A]ny deviation from the claim precludes a finding of literal infringement." *Litton Systems Inc. v. Honeywell Inc.,* 140 F.3d 1449, 1454 (Fed. Cir.1998).

■■ The purpose of the doctrine of equivalents is to prevent competitors from pirating the essence of an invention while narrowly avoiding the literal language of the claims. *See Laitram,* 863 F.2d at 856–57. It is intended to prevent a competitor from making merely insubstantial changes, but is not intended to punish legitimate "designing around" the patent claims. *See London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538 (Fed.Cir.1991). Designing around the patent claims is encouraged,·

because it stimulates invention and benefits society with new and useful products. *See id.*

In determining whether a product infringes under the doctrine of equivalents, courts are to apply an "element-by-element analytical framework for infringement." *Litton Systems,* 140 F.3d at 1454. Under this framework, "the doctrine of equivalents must be applied to individuals elements of the claim, not to the invention as a whole." *Id.* (quoting *Warner–Jenkinson,* 117 S.Ct. at 1049). The Supreme Court cautioned against allowing a range of equivalents with "such broad play as to effectively eliminate that element in its entirety." *Id.* (quoting *Warner–Jenkinson* at 1054).

■ The United States Supreme Court announced the function-way-result test for infringement under the doctrine of equivalents in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). To prove infringement under the doctrine of equivalents, the patentee must show that the accused device performs substantially the same function, in substantially the same way, to produce substantially the same result as the claimed invention. *See Graver Tank,* 339 U.S. at 608, 70 S.Ct. 854. The functional equivalent of every limitation must be found in the accused device or there is no infringement. *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 937 (Fed.Cir.1987).

I. Culligan's Motion for Summary Judgment

Culligan seeks summary judgment that its glass pitcher filter system (the "Culligan System") does not infringe patent '996 either literally or under the doctrine of equivalents. According to Culligan, at least two crucial claim limitations are missing from the Culligan System. First, the Culligan System lacks an air collecting space that "reaches to the opening" in the sleeve. Culligan asserts that prosecution history estoppel prevents Brita from as-

serting that the scope of equivalents ensnares the notch in the side of Culligan's filter which fails to reach "to the opening." Second, Culligan argues that the Culligan System does not have a "means defining an air collecting space."

The Culligan System consists of a glass pitcher, in which sits a reservoir (a "hopper") for water which has not yet passed through the filter. A filter cartridge is inserted in a sleeve in the hopper, through which water passes to be purified. Inlet holes on the top of the cartridge receive water and outlet holes on the bottom emit filtered water. On the side of the Culligan filter cartridge is a notch, which cuts a triangle shape out of the side of the cylindrical cartridge. The base of the notch is on the bottom of the filter cartridge, with the triangle extending up to a point towards the middle of the cartridge. A small hole is formed in the sleeve near the top where it attaches to the hopper. The upper point of the triangular notch is a substantial distance below the hole in the side of the sleeve. The bottom of the cylindrical filter cartridge is flat, and the notch, located a distance from the outlet holes, cuts a triangle shape out of the circular filter bottom.

Water when placed in the hopper moves downward through the filter cartridge and out the holes in the bottom of the cartridge, where it falls into the pitcher. According to Culligan, the triangular notch in the filter cartridge serves only to allow "the cartridge to be used as a replacement filter in Brita hoppers which have a rib extending along an interior surface of the hopper." The small hole in the side of the sleeve "allow[s] air within the pitcher to escape when it is displaced by the water coming through the filter cartridge." Unlike in Brita's sleeve, the Culligan System does not have a guide which ensures that the cartridge can only be placed in the sleeve so that the notch lines up with the opening in the sleeve.

Culligan argues that the Culligan System does not literally infringe Claim 1 because it lacks 1) an air collecting space that reaches "to the opening in said sleeve," and 2) the "means defining an air collecting space."

### A. "to the opening in said sleeve"

This Court previously interpreted the element as requiring that the chimney portion of the air collecting space reaches the elevation of the sleeve opening and not merely extend in a direction toward the opening.

### 1. Literal Infringement

In Brita's Memorandum in Opposition to Culligan's Motion for Summary Judgment ("Brita's Culligan Opposition Memorandum"), Brita acknowledges that the Culligan System does not literally infringe Brita's patent because the Culligan System does not have an air collecting space that reaches to the opening in said sleeve: "The Court has interpreted this claim element to mean that the air collecting space extends as high as the opening in the sleeve. However, the Culligan product contains an equivalent to the claim element." Brita's Culligan Opposition Memorandum at 9. Because the Culligan filter does not contain an air collecting space chimney that reaches the hole in the sleeve, the filter does not literally infringe the patent.

### 2. Infringement Under the Doctrine of Equivalents

Culligan further argues that this claim limitation is not present in the equivalent. First, it argues that Culligan's pitcher "lacks equivalent structure to the claimed air collecting space extending to an opening in the sleeve." Culligan's Memorandum in Support of its Motion for Summary Judgment at 7 ("Culligan's Support Memorandum"). Second, Culligan argues that Brita's patent is "entitled to only a narrow range of equivalent due to prosecution history estoppel." *Id.*

### i. Prosecution History Estoppel

Prosecution history estoppel "bars recapture of that subject matter actually surrendered during prosecution." *Litton,* 140 F.3d at 1455.

In support, Culligan cites to this Court's prior ruling in this matter. This Court concluded that "the file history illustrates, with crystal clarity, that the chimney portion of the air collecting space was intended to, and therefore must for claim construction purposes, extend to the elevation of the sleeve opening." *Brita* at *11. The Court noted that the Patent and Trademark Office (PTO) several times rejected the application. "These initial rejections were based on the PTO examiner's failure to understand how the invention worked." *Id.* at *10. Based on these objections, Brita modified Figure 4 of the patent in order to show more clearly that the chimney extended to an elevation above the sleeve opening. Brita also argued that it was "obvious" from Figure 4 that the chimney terminates above the opening. Finally, the Court noted that Brita added the words "to the opening" to Claim 1 in response to further objections by the examiner. Based on this prosecution history, Culligan argues that Brita is "estopped from arguing that equivalents of this feature may not include a vertical portion that terminates below the opening." Culligan's Support Memorandum at 9.

Culligan bolsters its argument with an analysis of case law on prosecution history estoppel, concluding that it "applies to arguments/amendments that are related to patentability, whether or not they relate to the prior art." *Id.* at 9. According to Culligan, this Court already determined that Brita amended Claim 1 for reasons related to patentability when the Court wrote that *"in order to obtain the patent,* the claim language was modified." *Brita* at *11 (emphasis supplied by Culligan). Culligan therefore equates the term "patentability" with this Court's use of the words

"in order to obtain the patent." Patentability, however, is a term of art with a meaning more precise than "able to be patented."

■ In *Litton*, the Federal Circuit interpreted *Warner–Jenkinson*, the Supreme Court's most-recent treatment of prosecution history estoppel. The *Litton* Court noted that "the [Supreme] Court recognized that the Warner–Jenkinson standard 'related to patentability' encompassed amendments 'made to avoid the prior art.'" *Litton*, 140 F.3d at 1457. In prior Supreme Court prosecution history estoppel cases, the Court had "probed the reasoning behind the Patent Office's insistence upon a change in the claims. In each instance, a change was demanded because the claims as otherwise written was viewed as not describing a patentable invention at all—typically because what it described was encompassed within the prior art.... [T]here are a variety of other reasons why the PTO may request a change in claim language." *Litton*, 140 F.3d at 1457–58 (quoting *Warner–Jenkinson*, 117 S.Ct. at 1050)). These other reasons include overcoming "indefiniteness and nonenablement rejections." *Litton*, 140 F.3d at 1458. The Supreme Court noted, with these objections in mind, that "if the PTO has been requesting changes in claim language without the intent to limit equivalents or, indeed, with the expectation that language it required would in many cases allow for a range of equivalents, we should be extremely reluctant to upset the basic assumptions of the PTO without substantial reasons for doing so." *Warner–Jenkinson*, 117 S.Ct. at 1040, 1050. Thus, prosecution history estoppel arises "only where claims have been rejected for a limited set of reasons" and the Court declined to create "a more rigid rule invoking estoppel regardless of the reasons for a change." *Litton*, 140 F.3d at 1458 (quoting *Warner–Jenkinson*, 117 S.Ct. at 1050). From this analysis, it is clear that the Federal Circuit in *Litton* has interpreted *Warner–Jenkinson* to exclude amendments in response to indefiniteness and nonenablement objections from "patentability" amendments, such as amendments to avoid prior art, which almost automatically give rise to estoppel. *See also Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1355 (Fed.Cir.1998) ("The meaning of the word 'patentability' was not made clear, but the context of the court's discussion was patentability over prior art.").

Brita's amendments were in fact in response to objections of the nonenablement and indefiniteness varieties, as the file wrapper makes clear that the examiner did not understand how the device could function.

The story does not end here, however, as "an amendment made for reasons other than patentability may still give rise to an estoppel." *Litton*, 140 F.3d at 1458. After examining under what circumstances estoppel court arise even without an amendment, the court concluded that "if an applicant makes an amendment unrelated to patentability which evinces an unmistakable surrender, that action will preclude recapture of the surrendered subject matter under the doctrine of equivalents." *Id.*

In its Reply Memorandum, Culligan argues that the nature and extent of the exchanges between Brita and the PTO evidence such an unmistakable surrender. Culligan argues that "a substantial portion of the prosecution history focused on Brita's attempts to adequately define the structure for collecting and dispensing trapped air bubbles." Culligan wishes to exclude from the range of equivalents an air tube which terminates well below the opening, such that the air could only reach the opening in the sleeve by traversing the air space between the filter and the sleeve. During its patent prosecution, "the inventor unequivocally and repeatedly stressed the importance of the vertical 'chimney' portion of the air collecting space extending to the opening in the sleeve." Culligan's Reply at 5.

■ Culligan is correct. Brita attempted to gain allowance for the device by using the air space between the sleeve and the filter as a path for air. It wrote to the examiner on November 15, 1989, that "[t]he space between the opposing wall of the partial-tubular air channel and the edge of the opening is sufficient for allowing all air or other gases collecting at the bottom of the insert to pass through." The examiner was unmoved, however, and responded on December 27, of the same year that "[t]he claims fail to structurally connect elements each to the other so as to define device capable of functioning as intended. Air space is present throughout and does not define structure."

Finally, Brita was forced to add the language "and to the opening in said sleeve" to its Claim 1. It was only after these amendments that the claim was eventually allowed. The file wrapper is clear that the claim allowance was contingent on a structure which created a path for air to flow up to the hole in the sleeve. By adding the claim language "to the opening" instead of continuing to push for allowance of a claim that relied on the ambient air space between the sleeve and the filter, Brita unequivocally surrendered an "equivalent" structure that relied on the ambient air space to carry the air up to the air hole for a significant portion of the path. Brita is therefore estopped from asserting as an equivalent structure one which stops short of the opening in the sleeve.

The Culligan filter does not contain a structure which carries air up to an opening in the sleeve. Any structure in the Culligan System which could perform this task would rely on the space between the sleeve and the filter to carry the air almost 25% of the way from the filter bottom to the air hole. Brita may not therefore claim Culligan's filter is equivalent.

ii. Absence of Equivalent Structure

■ Even if Brita were not subject to file wrapper estoppel, any determination by the fact-finder that Culligan's chimney structure was equivalent would "entirely vitiate" this claim element. *Bai,* 160 F.3d at 1354 (quoting *Warner–Jenkinson,* 117 S.Ct. at 1053 n. 8). Brita's theory that Culligan's chimney is equivalent even if it does not extend "to the opening" "would effectively read the [claim] limitation out of the claims, which the Supreme Court held is not permissible." *Phillips Petroleum Co. v. Huntsman Polymers Corp.,* 157 F.3d 866, 877 (Fed.Cir.1998)(citing *Warner–Jenkinson,* 117 S.Ct. at 1049). Not only does Culligan's chimney fail to reach the opening, but the chimney may not even be near the opening because the filter may be placed in the sleeve without regard to the alignment of the hold and the chimney. This is quite different from Brita's system which contains a groove which forces the chimney in the filter to line up with the hole in the sleeve. Thus, even in the absence of file wrapper estoppel, Culligan's filter could not as a matter of law infringe Brita's patent.

B. "means defining an air collecting space"

As already noted, the Court previously ruled that this claim limitation is a mean-plus-function clause. The function disclosed for this element is a space which gathers and then exhausts air bubbles from the filter bottom. The corresponding structure for this element requires a space with both a vertical and horizontal component, though these components are not restricted by the precise structures disclosed by the preferred embodiment.

1. Literal Infringement

■ In order to find literal infringement under a means-plus-function clause, the accused device must "perform the identical function as that identified in the means clause and do so with structure which is the same as or equivalent to that disclosed in the specification." *O.I. Corp. v. Tekmar Co. Inc.,* 115 F.3d 1576, 1581 (Fed.Cir.1997).

Culligan argues that its device lacks a component that performs the "means defining an air collecting space" function. While Brita has a cross-shaped air collecting space on the bottom of the filter, Culligan's filter has a flat bottom. Further, while every one of Brita's filter slots are in close proximity to a portion of the air collecting space, many of the holes in Culligan's filter bottom are far from the notch in the side of Culligan's filter. According to Culligan, its filter lacks horizontal structure on the bottom to gather or collect air and move it toward the chimney-notch. Thus, the Culligan filter does not have both horizontal and vertical components, and the Culligan filter does not literally infringe.

Brita responds that the "means defining an air collecting space" is not limited to the precise structures revealed in Brita's patent drawings or described in its preferred embodiment. Culligan's notch, according to Brita, has both horizontal and vertical components because it "slopes horizontally or radially outwards and vertically upwards." Brita's Culligan Opposition Memorandum at 3.

Brita's interpretation of this claim limitation is not consistent with the one expressed by this Court. The vertical and horizontal portions of the air collecting space cannot be merely a single chimney extending upward and outward. Rather, there must be "some kind of discontinuity or change in direction." *Brita,* 1998 WL 473467 at *7. Culligan's filter lacks a horizontal component. Not only does it not have half-tubes in a cross-shaped pattern, it has no tubes or other structure anywhere on the filter bottom that could serve to collect air bubbles and move them towards the chimney. Culligan's System therefore lacks a component that could be interpreted as horizontal component of the air collecting space. For this reason, the Culligan filter does not literally infringe Brita's '996 patent.

### 2. Infringement Under the Doctrine of Equivalents

In order for Culligan's System to infringe Brita's patent under the doctrine of equivalents, it must satisfy the function-way-result test, performing substantially the same function, in substantially the same way, to produce substantially the same result as the claimed invention. *See Graver Tank,* 339 U.S. at 608, 70 S.Ct. 854. Based on the analysis above, the Culligan System cannot run afoul of this test because it lacks components which serve to gather offending air bubbles to exhaust them out. Because the gathering and exhaustion of air bubbles is the function of this means-plus-function component, and the Culligan filter does not gather air bubbles, this test cannot be satisfied. *See Chiuminatta Concrete Concepts v. Cardinal Industries,* 145 F.3d 1303, 1310–1311 (Fed.Cir.1998).

For these reason, Culligan's motion for summary judgment is granted.

### II. Signature's Motion for Summary Judgment

Signature seeks summary judgment that its Health–O–Meter/Mr. Coffee pitcher filter system ("Signature System") does not infringe patent '996 either literally or under the doctrine of equivalents. Signature argues that the Signature System does not contain a "means defining an air collecting space" and does not have a vertical chimney-like structure which goes "to the opening in said sleeve." As the Signature System is substantially similar to the Culligan System, because the Culligan System does not infringe the '996 patent, neither does the Signature System.

Similar to the Culligan System, the Signature System consists of a plastic pitcher, in which sits a reservoir ("hopper") for water which has not yet passed through the filter. A filter cartridge can be inserted in a sleeve in the hopper. Tap water is poured into the hopper where it passes through the filter, coming out the bottom

of the filter cartridge and falling into the pitcher.

The filter cartridge is substantially similar to the one used in the Culligan System, with a notch going part of the way up the side. The sleeve for the Signature System is different from that of the Culligan System in that instead of one small air hole at the top of the sleeve there are four, much larger square openings.

Because of the similarities in systems and in particular the similarities in filter, the arguments presented by the parties are similar to those presented in Culligan's motion for summary judgment. For the reasons articulated in this Court's discussion of Culligan's motion, Signature's motion for summary judgment is granted. The filter used in the Culligan System does not have a chimney that goes "to the opening in said sleeve." The Signature System does not infringe this claim limitation either literally or through the doctrine of equivalents. Similarly, the Signature System has the same "means defining an air collecting space" as does the Culligan System. That is to say, Signature filter does not infringe this claim limitation either literally or under the doctrine of equivalents for the same reasons the Culligan System is noninfringing.

For these reasons, Signature's motion for summary judgment is granted.

III. Recovery's Motion for Summary Judgment

Recover seeks summary judgment that its water pitcher filtration system ("Recovery System"), marketed under the brand name P;UR, does not infringe the '996 patent either literally or under the doctrine of equivalents. According to Recovery, its Recovery System is substantially different from the Brita System (and for that matter from the Culligan and Signature Systems). Recovery argues that its system does not contain: 1) a sleeve which is a "single continuous structure," 2) a sleeve with "two open ends," 3) a "permanent opening," 4) a "means defining an air collecting space," 5) a "horizontal component" to such means, or 6) air collecting space which "reach all the way to" an alleged opening. According to Recovery, the large number of differences between its system and Brita's in and of itself dictates summary judgment in its favor. Recovery also argues prosecution history estoppel and estoppel based on prior art.

While outwardly looking similar to the Brita System, the technology of the Recovery System is not identical. The Recovery System has a hopper, pitcher, sleeve, and filter cartridge. The sleeve consists of two parts. The top of the sleeve is attached to the hopper. The bottom part of the sleeve consists of a cap in which the filter cartridge sits. To assemble the Recovery System, the cartridge is placed into the cap, which is then placed into the top part of the sleeve.

Water is still poured into a hopper where it passed through a filter and then falls into the pitcher. The flow of the water after it enters the filter and before it falls into the pitcher is quite different, however. The water does not simply pass through the filter and fall out the bottom of the filter directly into the pitcher. Instead, the filter cap collects the water which passes out the bottom of the filter. Because the filter takes up most of the space of the cup, the water is forced back upward through a deep groove cut into the cylindrical side of the filter. When the water in the groove flows approximately one third of the way up the side of the filter and cup, a hole in the side of the cup diverts the water into a groove built into the cup where it streams downward and out a small opening on the side and towards the bottom of the cup, where it falls into the pitcher.

As just noted, a narrow but deep groove has been cut into the cylindrical filter cartridge. Towards the top of the filter the groove is relatively shallow but gets considerably deeper relative to the outer surface of the cartridge approximately one third of the way down from where the

groove begins. At this point, the groove slants towards the center of the cartridge at an angle such that it emerges on the circular bottom of the cylinder approximately one third of the way along the diameter of the circular bottom. The groove becomes significantly more shallow after it extends onto the circular bottom of the cartridge, stopping at the outer edge of the cartridge bottom, opposite the groove on the cartridge side. On the filter bottom, the groove has small "walls" which separate it from the portion of the filter bottom with holes that emit the purified water.

The cup which fits around the cartridge has a ridge which fits into the groove cut into the side of the cartridge. The lower portion of the ridge helps guide the water up the groove and into the opening in the side of the cup. The portion of the ridge that extends up towards the top of the cartridge almost entirely fills the groove running up the side of the cylinder.

### A. "means defining an air collecting space"

#### 1. Literal Infringement

For all the reasons set out by this Court in its analysis of Culligan's filter, the Recovery filter does not have a means defining an air collecting space. No structure on the bottom of the Recovery filter can serve the function of gathering air bubbles. Recovery's filter bottom is almost entirely flat, lacking a system of tunnels for gathering and then venting air bubbles. Indeed, the filter bottom has walls which separate the groove from the portion of the filter out of which water flows. The Recovery filter therefore does not have structure on its bottom that could be considered a horizontal component that would gather air bubbles. There is no literal infringement.

#### 2. Infringement Under the Doctrine of Equivalents

As this is a means-plus-function component there can be no infringement under the doctrine of equivalents.

### B. the sleeve

Recovery's sleeve, if in fact one exists, is substantially different from the sleeve described in the '996 patent. This Court has interpreted the claim to require 1) a single continuous structure, 2) two open ends, and 3) a permanent opening.

#### 1. Literal Infringement

▆▆ Assuming that Brita is correct that Recovery's sleeve is a "two-piece sleeve" with the filter cap as the bottom of the sleeve (Brita's Recovery Opposition Memorandum at 2–3), there can be no literal infringement on these claim limitations. First, Recovery's sleeve is not a continuous structure. Rather, it consists of a portion of the sleeve which is permanently attached to the hopper and a second portion which the user attaches in order to form the sleeve. There is therefore no single continuous structure.

Second, the sleeve does not have two open ends. While the top end is open, the bottom end is a cup with a groove and one small hole on the cup's side for water to drain out after it travels back up the side of the filter, as discussed above. Because the bottom of the sleeve is closed, this claim limitation is not literally infringed by Recovery's System.

Third, at times Brita argues that there exists "an annular opening formed at the overlap of the top and bottom pieces of the two-piece sleeve." Brita's Recovery Opposition Memorandum at 6. At other times, Brita argues that the hole in the side of the sleeve out of which water flows into the pitcher is the "opening formed therein."

To the extent that Brita argues that opening is the annular opening formed in the overlap, that opening cannot literally infringe the '996 patent as interpreted by this Court. This Court required that the opening be a single opening which is a

permanent part of the sleeve. Because the annular opening is not permanent but is created and dismantled when the filter cup and filter are attached or taken out of the hopper, the opening is not permanent and cannot therefore literally infringe the '996 patent.

2. Infringement Under the Doctrine of Equivalents

 Although the Recovery System does not literally have a sleeve, as interpreted by this Court, if it has an element which is its equivalent, then there can still be infringement. Using the function-way-results test to compare the Brita and Recovery Systems, this Court determines as a matter of law that the Recovery System does not infringe the '996 patent under the doctrine of equivalents.

According to Brita, the function of the sleeve is "surrounding the filter, providing a generally enclosed chimney for the outflow of air, and allowing the filtered water to flow into the pitcher." Brita's Recovery Opposition Memorandum at 3. Assuming this is the correct interpretation of the function of Brita's sleeve, Recovery argues vehemently that this is not the function of its sleeve. Its sleeve "collects carbon fines from the filter, keeps the filter wetted, and slows the rate of flow of water." Recovery's Reply at 6. There is substantial undisputed evidence that this is exactly what Recovery's pitcher does. This is not merely the addition of elements, as Brita suggests, but is a substantially different function for the "sleeve."

Moreover, even if the functions of the '996 sleeve and Recovery's sleeve are the same, the way in which they perform the function is entirely different. Recovery's sleeve causes water to flow into the pitcher in a substantially different way. As Brita has admitted, Recovery's sleeve does not simply allow water to fall into the pitcher from the filter bottom but slows down the flow of the water from the filter so that the filter does a better job in purifying the water. The result is thus

quite the opposite from the result of Brita's invention, as the purpose of the '996 invention, as disclosed to the patent office, is the increase in the rate of water flow.

This Recovery sleeve therefore fails the function-way-result test and does not infringe the '996 patent under the doctrine of equivalents.

C. "to the opening in said sleeve"

Because Brita discusses two separate openings in Recovery's sleeve as candidates for this claim limitation, this Court will examine each opening.

1. Annular Opening

Even if the "opening in said sleeve" could mean the opening at the intersection of the two sleeve components, the only chimney that runs up to the opening is almost entirely blocked by the ridge in the side of the filter cap. A chimney which by design is entirely blocked is no chimney at all. The Recovery System therefore does not contain a chimney which reaches the top of the filter.

2. Opening in the Sleeve

The chimney is not blocked at the point it passes the opening in the sleeve in the Recovery System through which the purified water flows out into the pitcher. This opening, however, bears no resemblance to the opening in the '996 patent. The opening in the Recovery System is the opening for the flow of water, and the chimney is in fact a conduit for the purified water. These elements in the Recovery System are in no way similar to what Brita asserts are the corresponding elements in the '996 patent. Brita's arguments that these are corresponding elements defies logic and rational argument. These elements in Brita's System, as articulated in excruciating detail and at exhaustive length in Brita's patent, do not correspond to any elements in Recovery's product.

### D. Prior Art Preclusion

Because the Court has determined that Recovery's product does not infringe the '996 patent, this Court will not examine Recovery's argument that prior art precludes a finding of infringement as a matter of law.

For these reasons, Recovery's motion for summary judgment is granted.

## CONCLUSION

For the reasons outline in this opinion, Culligan, Signature, and Recovery's motions for summary judgment are GRANTED. Brita's motions are denied as moot. Brita's complaint is hereby DISMISSED.