**SAEILO, INC. (doing business as Kahr Arms), Plaintiff–Appellant,**

v.

**COLT'S MANUFACTURING COMPANY, INC., Defendant–Appellee.**

No. 01–1137.

United States Court of Appeals, Federal Circuit.

Jan. 16, 2002.

Before CLEVENGER, Circuit Judge, ARCHER, Senior Circuit Judge, DYK, Circuit Judge.

CLEVENGER, Circuit Judge.

Saeilo, Inc., doing business as Kahr Arms ("Saeilo"), appeals the decision of the United States District Court for the Southern District of New York denying its motion for summary judgment of infringement of U.S. Patent No. 5,415,075, and instead granting summary judgment of noninfringement to defendant Colt's Manufacturing Company, Inc. ("Colt"). We find no error in the district court's claim construction, and find that under this construction there is no dispute of fact that Colt's accused products do not literally infringe. We also find that prosecution history estoppel precludes a finding of infringement under the doctrine of equivalents. We therefore *affirm* the judgment of the district court.

## BACKGROUND

This appeal arises from Saeilo's infringement suit against Colt's Manufacturing, asserting infringement of U.S. Patent No. 5,415,075 ("the '075 patent"), directed to improvements in compact semiautomatic firearms. The '075 patent covers a design for a low-profile semiautomatic handgun. As the district court ably explains, semiautomatic firearms rely on the explosive force of the ammunition to eject a spent round and insert a new round into the gun breech. In the design employed by Saeilo and the accused products, the rear of the barrel moves downward as it recoils backward, tilting the entire barrel to break the breech seal and receive a new round. The rearward motion of the barrel upon recoil is directed downwards by means of a "cam," which is a general term for an

element that interconverts linear and rotary motion.

In the embodiment depicted in the '075 patent, the cam is formed by two lugs protruding downward from the rear of the barrel, which form a cam surface into which a camming pin fits. When the barrel recoils backwards after firing, the relative movement of the cam surface against the camming pin forces the rear of the barrel to move downward relative to the camming pin. This downward movement of the barrel provides the tilt of the barrel necessary for the semiautomatic mechanism.

Since the camming pin defines the axis around which the barrel moves, to provide for the proper rotation of the barrel, the camming pin (and hence the cam lugs) must be set some distance below the barrel. However, when the breech moves downwards after firing, the cam lugs also move downwards. To ensure that the cam lugs do not interfere with the trigger assembly in the recoiled position, the design of the '075 patent provides cam lugs that are laterally displaced from the bore axis. If the trigger bar is set on one side of the gun and the cam lug on the other, there will be enough space for the cam lug and the trigger bar to overlap without interfering with each other. This design permits the cam lugs and trigger assembly to be placed in close proximity to each other, thereby allowing the barrel to be set close to the trigger and providing a low-profile, easily concealable firearm. In the embodiment depicted in the '075 patent, the cam lug is uniform in cross-section and is displaced to one side of the bore axis along its entire length.

Colt's accused design is similar in principle. However, instead of a symmetrical cam lug placed off-center from the bore axis, Colt's design features a cam lug centered on the bore axis. Rather than offset the entire lug, Colt removes material from one side of the lug to provide clearance for the trigger assembly. Thus, in Colt's design, the cam lug varies in cross-section along its length, and is centered on the bore axis—at least in those portions of the lug that do not overlap with the trigger assembly.

The only claim limitations at issue in this appeal appear in claim 1, which recites "said cam lug being laterally offset relative to the axis of said bore," and claim 9, which specifies that the "lug has a central axis parallel to and laterally offset relative to the axis of said bore." Claims 1 and 9 are the only independent claims of '075, and, treating the limitations of claim 1 and claim 9 as similar, the parties have focused their dispute on whether Colt's cam lug meets the "laterally offset" limitation.

Saeilo and Colt made cross-motions for summary judgment, each side submitting to the district court its proposed interpretation of the disputed claim language. Saeilo proposed a construction of "laterally offset" meaning "having a cross-section in the region where the trigger will pass by the lug the central axis of which is off-set laterally from the central axis of the bore." Essentially, Saeilo proposed that a cam lug will meet this limitation if the lug is "laterally offset" from the bore axis at *any* point where the trigger assembly will pass by. The district court, however, preferred Colt's view of the plain language of the claim, and interpreted the limitation to require that the cam lug be laterally offset from the bore axis along the entire length of the lug. While the district court viewed the prosecution history as uninformative, the court found support for its interpretation from the fact that the '075 drawings depict a cam lug laterally offset from the bore axis along its entire length.

Since Colt's accused products do not feature a cam lug that is laterally offset

from the bore axis along its entire length, the district court concluded that the accused designs could not meet the "laterally offset" limitation of claims 1 or 9. Accordingly, the district court found that Saeilo had failed to create an issue of material fact on the question of whether the accused products could literally infringe claims 1 and 9, and granted summary judgment of noninfringement to Colt. Furthermore, the district court held that Colt's structure could not infringe under the doctrine of equivalents, since such a finding would obviate the requirement that the cam lug be laterally offset along its entire length. The district court also concluded that Saeilo had surrendered structures analogous to the Colt lug when it amended its claims to overcome an anticipation rejection during prosecution of '075. The district court therefore also held that prosecution history estoppel barred Saeilo from asserting infringement under the doctrine of equivalents, and granted summary judgment of noninfringement under the doctrine of equivalents to Colt. Saeilo asks that this court reverse the district court's grant of summary judgment, and, at the least, remand the case for trial of infringement. We exercise jurisdiction over Saeilo's appeal under 28 U.S.C. § 1295(a)(1).

I

■ "When a district court *grants* summary judgment, we review without deference to the trial court whether there are disputed material facts, and we review independently whether the prevailing party is entitled to judgment as a matter of law." *SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1333, 51 USPQ2d 1811, 1814 (Fed.Cir. 1999). Infringement is determined by a two-step inquiry: claim construction and comparison of the properly construed claims to the accused matter. *Bai v. L &*

*L Wings, Inc.*, 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998). A district court's claim construction is an issue of law, reviewed *de novo. Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc). Although whether the properly construed claims encompass the accused device, either literally or under the doctrine of equivalents, is a question of fact, summary judgment of noninfringement is proper when no reasonable jury could find that every limitation of the properly construed claim is present in the accused device. *Bai*, 160 F.3d at 1353–54, 48 USPQ2d at 1676–77. Moreover, whether infringement under the doctrine of equivalents is barred by prosecution history estoppel is a question of law, reviewed *de novo. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*, 234 F.3d 558, 585, 56 USPQ2d 1865, 1885 (Fed.Cir.2000) (en banc).

II

■ To construe the meaning of the disputed limitation, the court looks first to the words of the claims themselves. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed. Cir.1996). The district court correctly began with the plain words of the claim and recognized that the dispute centers around how "laterally offset" should be applied to "lug." The claim language requires that the lateral offset of the cam lug be gauged relative to the axis of the bore. The district court reasoned that since the lateral offset is defined relative to the bore axis, and since the bore axis runs the entire length of the bore, the lateral offset must extend for the entire length of the lug.

While one might find fault with the district court's syllogism, we agree with its conclusion. As the district court appreci-

ated, this dispute boils down to whether "laterally offset" must refer to the entire lug, or only to a portion of the lug. The claim language requires only that the "lug" be laterally offset from the bore axis. Between "the entire lug" and "a portion of the lug," we think the former is the more natural reading of the plain term "lug." When language is used precisely and naturally, a piece or portion of a lug is not a "lug." Moreover, we note that the drafter of Saeilo's claims knew how to couch elements in the appropriate language when he or she contemplated that the claim language should be so interpreted. When describing how the trigger assembly passes by the offset lug in the unlocked position, claims 1, 3, and 9 refer to "a portion" or "portions" of the trigger and trigger bar. The fact that no such proviso appears with respect to the cam lug suggests that "lug" should be given its most natural meaning—a lug in its entirety.

Having considered the plain meaning of the claim language itself, the district court next looked to the specification to determine whether the inventor had used any terms in a manner inconsistent with their ordinary meaning. The specification refers the reader to Figure 2 of the drawings for a demonstration of the lateral offset. As conceded by Saeilo at oral argument, Figure 2—like all other figures in the patent—shows only a lug of uniform cross-section that is laterally offset from the bore axis along its entire length. Although Saeilo objects that construing "laterally offset" by reference to the preferred embodiment would import a limitation from the specification into the claims, the specification provides no support at all for Saeilo's proposed definition. Neither the specification nor the prosecution history makes any reference to the cross-section of the lug, to any means of calculating the central axis of the lug, or to a region of the lug where the trigger will pass by the lug.

Moreover, Saeilo's proposed definition requires that the cam lug have more than one central axis, and neither the specification nor the prosecution history makes reference to more than one central axis. Since the specification provides no support for Saeilo's proposed definition, we think the district court did not err by referring to the embodiments disclosed in the specification to reinforce its construction of the disputed claim language.

Saeilo, seizing on the district court's use of "notch" to describe Colt's design, relies heavily on a single passage in the specification reading:

> The lateral offset of the barrel cam lug 28 provides a space or notch 37 between an associated one of the inner surfaces 29 and an opposing face 39 on the barrel cam lug 28.

'075 patent, col. 3 II. 5–9. Like the district court, we find little support for Saeilo's proposed definition in this language. At the outset, we are not inclined to accord much weight to the use of the term "notch," since we have no indication what "notch" means. Simply because the parties and the court have used the nondescript term "notch" to describe Colt's design does not mean that "notch" as used in the '075 specification bears any relation to the accused device.

In any event, this language does not literally describe a notch *in* the lug itself or equate the lateral offset to a notch; rather, this passage says only that the face of the lug and the inner surface of the receiver define a space or notch. The simplest interpretation of this language is simply that "notch" refers to the space bounded by the offset lug and the receiver housing, as shown in Figure 2 of '075. Such a "notch" may be formed simply by the apposition of the cam lug and the receiver housing, without removing any

material from the lug itself. In other words, this language suggests only that a space or notch may be created by the spatial relationship of the lug and receiver elements, but not by any peculiarity or variation in their cross-section. Thus, one need not interpret the use of "notch" in the patent text as corresponding to the "notch" in Colt's design, which could be defined as a "notch" without reference to the receiver housing.

Moreover, the language pointed to by Saeilo was absent from '075 as originally filed. As originally written, the specification did not include the language quoted above. Instead, the specification described the novel feature of the invention in the following terms:

> the cam 28 as shown in FIGS. 2 and 3 particularly, is staggered, with notch 30 defined in the location shown in the drawings as a cut in the camming lugs of the barrel.

But the "notch" in this passage is not the space that allows for the trigger assembly to pass, and is not a "notch" in the sense used by Judge Duffy to describe Colt's lug design. As clearly shown in the original Figure 3, "notch" in the application as filed referred to the space between the cam lugs into which the camming pin fits when the barrel recoils—that is, the operative cam surface. In the application as originally filed, the term "notch" did not relate to the lateral offset of the cam lug. As recognized by Saeilo's patent attorney during prosecution, the amendments to the specification could not have introduced new matter beyond that already found in the specification and claims as filed. Thus, we cannot view the new language "space or notch" as suggesting any structure not already inherent in the application as originally filed. We conclude that the '075 specification does not support Saeilo's proposed claim construction.

Also like the district court, we find the amendments in response to the initial rejection by the PTO are of little relevance to determining the literal scope of the "laterally offset" limitation. Colt argues at some length that Saeilo disclaimed coverage of Colt's "notch" design when Saeilo substituted a new claim lacking the term "notch" for its original claim, and when Saeilo traversed a section 102(b) rejection over the Roy reference (U.S. Patent No. 3,756,120). As we explain above, the fact that Saeilo replaced an original claim containing the word "notch" with an amended claim lacking the word "notch" is not relevant, since the term "notch" in the original application had no relation to the lateral offset at issue here.

Neither did Saeilo's traversal of the Roy reference explicitly surrender any subject matter. In the Roy design, the cam lug is positioned well forward of the trigger assembly, even when the barrel is fully recoiled. Roy provides a cut-out in the barrel itself—not a cut-out in the cam lug—to provide space for the trigger and trigger bar when the barrel recoils backwards. Since, in Roy's design, the trigger and trigger bar are always positioned behind the lug, overlap between the trigger assembly and the cam lug is not an issue. This much was recognized by Saeilo's patent attorney, who argued that "the problem solved by applicant's claimed structure does not exist in the Roy structure." Consequently, Saeilo's traversal of the rejection over Roy cannot be said to have disclaimed any elements of Colt's design. Since the prosecution history provides no insight to how the term "laterally offset" ought to be construed, the district court properly limited its analysis to the claim language and the specification.

Thus, considering first the plain language of the claim, and second, the '075 specification, we arrive at the same conclu-

sion reached by the district court. Namely, that "laterally offset" as used in claims 1 and 9 imposes a limitation on the entire cam lug, and not on merely a portion of the lug. We are not persuaded by Saeilo's argument that such a construction is improper because it allows Colt to escape infringement by adding "extra metal" to a lug that is otherwise infringing. The "extra metal" of Colt's lug is an integral part of the lug design, not an extraneous addition. Moreover, even under Saeilo's proposed definition, one could avoid infringement by adding or removing metal from other regions of the lug such that the central axis of a cross-section, however that might be defined, would not be laterally offset from the bore axis.

Employing this proper claim construction, the district court concluded that no dispute of material fact existed as to whether Colt's design met the "laterally offset" limitation of claims 1 and 9. Saeilo has not attempted to argue that, given this claim construction, a finding of literal infringement was possible. Nonetheless, our independent review convinces us that there is no genuine dispute as to whether the accused products meet the "laterally offset" limitation of claims 1 and 9. Since the burden rested with Saeilo to prove that the accused devices meet each and every limitation of the '075 claims, the district court correctly denied Saeilo's motion for summary judgment of literal infringement, and correctly granted Colt's motion for summary judgment that the '075 claims were not literally infringed.

### III

The district court held, as a matter of law, that Saeilo could not establish infringement under the doctrine of equivalents. The district court based its grant of summary judgment on two grounds. First, since the district court had construed claims 1 and 9 to require the cam lug to be laterally offset for the entire length of the lug, the court thought that considering the "notch" in Colt's design to be an equivalent would read an express limitation out of the claims. Second, since the court thought that Saeilo had amended its claims to remove the word "notch," the court concluded that prosecution history estoppel precluded Saeilo from reclaiming the "notch" of Colt's design by resorting to the doctrine of equivalents. Because we hold that prosecution history estoppel bars Saeilo from asserting infringement under the doctrine of equivalents, we need not address whether a finding of infringement under the doctrine of equivalents would read an express limitation out of the claims.

■ We do disagree with the district court that Saeilo expressly disclaimed Colt's lug design by amending its claim to remove the word "notch" or by traversing the anticipation rejection over Roy. As noted above, the "notch" in original claim 1 referred to the space for the camming pin, not the space for the trigger assembly. Thus, the mere removal of the word "notch" did not narrow the cam lug element, but merely described the lug as "a depending cam lug defining a cam surface" instead of "cam lugs for providing rotation of said barrel, said lugs defining a notch." There is essentially no difference between the scope of these limitations, and the amendment did not explicitly surrender any claim scope reading on the Colt structure. Concerning the rejection over Roy, we have already noted that the prosecution history shows that the patentee traversed the rejection over Roy by arguing that the overlap problem addressed by the Saeilo and Colt lugs did not arise in Roy's design. Even if we were to assume that the claim amendments were at least in part made to avoid the Roy reference, Roy does not

disclose any structure similar to Colt's cam lug.

■ Nonetheless, even if the patentee did not limit its claims to avoid the Roy reference, Saeilo is precluded from asserting any equivalents to the "laterally offset" limitation because that limitation was added by way of an amendment that narrowed the scope of the claim. The prosecution history clearly shows that the patentee amended its claim to overcome an indefiniteness rejection under 35 U.S.C. § 112, 2nd paragraph. The original claim 1 recited "a structure which eliminates potential interference between the trigger bar and the barrel and provides a compact handgun, comprising cam lugs for providing rotation of said barrel, said lugs defining a notch." As we have described, the "notch" in original claim 1 could only have referred to the element designated as the cam surface in the issued patent. Original claim 1 therefore set no structural limitations on the cam lugs, other than that they defined a cam surface.

The examiner rejected original claim 1 as "vague and functional" under section 112, 2nd paragraph, because "this claim merely lists problems for structural solution, rather tha[n] the arrangement, configuration and/or positioning of the various elements to solve the problems." In response, the applicant submitted new claims 4 and 12 (issued claims 1 and 9), which recited much more specific details of structure. These amendments added the "laterally offset" limitation at issue here.

■ Where an amendment narrows the scope of a claim for a reason related to the statutory requirements for patentability, prosecution history estoppel acts as a complete bar to the application of the doctrine of equivalents to the amended claim element. *Festo*, 234 F.3d at 568–69, 56 USPQ2d at 1871–72. Under *Festo*, amendments made to overcome rejections under section 112, 2nd paragraph give rise to prosecution history estoppel if they narrow the scope of the claim. *See Glaxo Group Ltd. v. Ranbaxy Pharms., Inc.*, 262 F.3d 1333, 1338, 59 USPQ2d 1950, 1954 (Fed.Cir.2001).

There may be cases in which an original claim is so indefinite that it will be difficult to tell whether a claim amendment has "narrowed" a particular element common to the original and amended claims. Such is not the case here, however. This case is indistinguishable from *Festo*, in which a limitation requiring "a cylindrical sleeve made of a magnetizable material" was added by amendment to overcome a rejection under section 112, 1st paragraph. Prosecution history estoppel barred the patentee from asserting equivalents to the magnetizable sleeve. *Festo*, 234 F.3d at 588, 56 USPQ2d at 1888. Here, the limitation that the cam lug be "laterally offset relative to the axis of said bore" was added by amendment in response to a rejection under section 112, 2nd paragraph. Since the original claim placed no such limitations on the cam lug, adding the "laterally offset" limitation narrowed the scope of the claim. Prosecution history estoppel bars Saeilo from asserting any equivalents to the "laterally offset" limitation.

## CONCLUSION

For the reasons set forth above, we agree with the district court that, once properly construed, claims 1 and 9 could not read on Colt's accused devices, either literally or under the doctrine of equivalents. We therefore affirm the district court's grant of summary judgment of non-infringement.

## COSTS

No costs.