Keith H. TAYLOR, Plaintiff,

v.

DAIMLERCHRYSLER AG, Defendant.

No. 00–75350.

United States District Court,
E.D. Michigan,
Southern Division.

March 12, 2004.

---

8. At the hearing Crager did not put forth any arguments regarding her ADA claim.

Michael H. Baniak and Jeffrey A. Pine of Baniak, Pine & Gannon, and Andrew Kochanowski of Sommers, Schwartz, Silver & Schwartz, Southfield, MI, for plaintiff Keith H. Taylor.

Richard L. Mayer, Michael J. Lennon, Jeffrey M. Butler, Mark A. Hannemann, and Paul T. Qualey, all of Kenyon & Kenyon, New York City, Marjory G. Basile of Miller, Canfield, Paddock & Stone, Detroit, MI, for defendant DaimlerChrysler AG.

### *MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION*

COHN, District Judge.

## I. Introduction

This is a patent case. Plaintiff Keith H. Taylor (Taylor), holder of U.S. Patent No. 4,821,019 (the '019 patent) covering a Mirror Assembly Including An Image Forming Lamp, is suing DaimlerChrysler AG (DCAG) for infringement in the making, etc., of Mercedes–Benz automotive mirror assemblies (DCAG mirror assembly) which fall within the scope of one or more of the claims of the '019 patent. At this time the

sole claim in issue is claim 1, from which all other claims in the '019 patent depend.

On November 13, 2003, the Court granted DCAG's renewed motion for summary judgment of noninfringement.[1] Before the Court is Taylor's motion for reconsideration. For the reasons that follow, Taylor's motion is DENIED.

## II. Background

Claim 1 of the '019 patent (broken down into appropriate clauses) reads:

1. A mirror assembly (10) comprising:

a translucent housing (12) including a plastic shell being substantially cup shaped and having an open end and a closed end and a wall extending from said closed end,

said wall and said closed end and containing and concealing illuminating image forming means within said housing (12) and preventing incident light from passing therethrough while only revealing an illuminated image through at least one of said well and closed end projected from the illuminating image forming means;

mirror means (20) retained by said housing (12) within and adjacent to said open end; and

said illuminating image forming means (26) mounted within said housing (12) adjacent at least one of said closed end and wall and completely behind said mirror means (20) so as to be hidden from view from outside said housing (12) and said mirror means (20) for projecting only said illuminated image through at least one of said wall and closed end of said shell (12).

Because there were no genuine issues of material fact, the Court granted summary judgment of noninfringement finding that

DCAG did not infringe claim 1 of the '019 patent for two reasons: (1) the DCAG mirror assembly does not literally or equivalently have a "translucent housing,"[2] and (2) the DCAG mirror assembly does not literally or equivalently have a wall and closed end "containing and concealing illuminating image forming means within said housing ... and preventing incident light from passing therethrough" so that the illuminating image forming means is "hidden from view."[3]

## III. Discussion

### A. Standard of Review

Under E.D. Mich. LR 7.1(g)(3), a motion for reconsideration will not be granted if it "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." *Id.*

### B. Analysis

■ Taylor says that the Court erred in granting summary judgment for DCAG in six respects: (1) Taylor was never given a sufficient opportunity to argue for his interpretation of "translucent housing," (2) the Court erred by construing "translucent housing" to mean a housing that is entirely translucent, (3) the Court erred by construing "incident light" to mean light that is coming from outside the housing toward the housing, (4) the Court relied on misleading flash photographs instead of Taylor's demonstration at the hearing, (5) the Court erred in finding that the "translucent plastic piece with circular designs" is part of the illuminating image forming

---

1. *See* Memorandum and Order Granting Defendant's Renewed Motion for Summary Judgment of Noninfringement (November 13, 2003) (Memorandum and Order).

2. *See* Memorandum and Order, at 13–22.

3. *See* Memorandum and Order, at 24–30.

means and not the housing, and (6) the Court erred in finding prosecution history estoppel regarding the other elements in claim 1. Many of Taylor's arguments, however, merely present the same issues previously ruled upon. Reconsideration is only warranted if Taylor can demonstrate a palpable defect by which the Court and the parties have been misled and correcting the defect would require denying DCAG's motion for summary judgment. Taylor has not done so.

### 1. Taylor's Opportunity to Argue For His Interpretation of "Translucent Housing"

█ Taylor says that because DCAG did not identify "translucent housing" as an ambiguous term that needed construction, he was not able to advance his claim construction arguments. As a result of this procedural deficiency, Taylor says that the Court granted summary judgment for DCAG without the benefit of Taylor's position on claim construction. A review of the procedural history, however, shows that Taylor had ample opportunity to argue for his interpretation of "translucent housing" and did in fact submit his arguments, which were considered.

This case was originally assigned to Judge George E. Woods. Both parties filed claim construction statements on August 29, 2002. Taylor proposed the following construction: "A housing constructed from a translucent material such as a hard plastic having a closed forward facing portion and an open rearward facing portion, and including at least a translucent portion. The translucent housing does not have to be translucent in its entirety." DCAG stated that the term should be interpreted to mean "a housing that is entirely translucent." Both statements were stricken because they did not comply with Judge Woods' order of August 22, 2001

requiring a joint claim construction statement. The parties then filed a joint claim construction statement on December 16, 2002 with the same interpretations. The case was reassigned to this Court on January 14, 2003.

On March 20, 2003, DCAG identified eight terms that it said required interpretation, including "translucent housing." The parties then conducted a tutorial. DCAG says that Taylor acknowledged at the tutorial that "translucent housing" was not ambiguous. On March 31, 2003, DCAG filed a revised list of two terms requiring interpretation: "wall extending from said closed end" and "illuminating image forming means." The revised list did not include "translucent housing."

On April 24, 2003, DCAG filed its renewed motion for summary judgment arguing that "translucent housing" did not cover mirrors with a lens mounted in an opening in an otherwise opaque housing. On May 19, 2003, Taylor responded arguing that "[t]he translucent housing is properly construed as a housing having a translucent portion" based on the language of the claim and specific citations to the specification and prosecution history. On May 27, 2003, the Court conducted a *Markman* hearing for the two terms previously identified by DCAG. Taylor then filed a supplemental response to DCAG's summary judgment motion again arguing that "translucent housing" meant a housing with a translucent portion. The Decision on Claim Construction was filed on August 21, 2003.[4] The Court held a hearing on the summary judgment motion on October 2, 2003 and issued its decision granting summary judgment for DCAG on November 13, 2003.

Whether "translucent housing" means a housing that is entirely translucent or one

4. *See* Decision on Claim Construction (August 21, 2003).

that is only partially translucent was at issue beginning in 2002. Taylor made his claim construction arguments in his papers during the initial round of briefing in 2002. After the case was reassigned, "translucent housing" was identified for interpretation but, for unknown reasons, was later deleted as a term requiring interpretation during the course of the *Markman* proceedings. Presumably, both parties agreed that "translucent housing" should be given its ordinary meaning, although they disagreed as to the ordinary meaning of the term. Clearly, however, Taylor understood DCAG's position on the ordinary meaning of the term throughout the case and had the opportunity to respond, and in fact did respond, to DCAG's "translucent housing" interpretation in his papers and at the October 2, 2003 hearing. Contrary to Taylor's assertions, DCAG did not raise the issue for the first time in its reply brief.

The Court has great discretion as to the timing for the interpretation of patent claims as a matter of law. *See Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.,* 74 F.3d 1216, 1221 (Fed.Cir.1996). Here, while it would have been desirable to squarely address the interpretation of "translucent housing" at the *Markman* hearing, Taylor had ample opportunity to argue, and did in fact argue, for his interpretation of "translucent housing." Considering the scope of the argument on the language of claim 1, the specification, and the prosecution history, however, DCAG's interpretation, not Taylor's interpretation, is the correct one as will be further discussed.

### 2. Claim Construction of "Translucent Housing"

█ Presenting many of the same arguments that he did previously, Taylor says that the Court erred in construing "translucent housing" to mean a housing that is entirely translucent.

First, Taylor says that there is no need to determine whether the housing must be entirely or only partially translucent because "[a] translucent housing is just that- a housing that is translucent." Taylor's position is directly contrary to his arguments during the summary judgment briefing where he argued that "translucent housing" is properly construed as "a housing having a translucent portion." Thus, because the parties offered different interpretations, it was necessary for the Court to determine the correct interpretation as a matter of law.

Second, Taylor disputes the Court's conclusion that because the noun "housing" is directly modified by the adjective "translucent" in claim 1, the ordinary and unambiguous meaning of the combined term is that the whole housing must be translucent. In addition to the cases previously cited,[5] a recent decision from the Federal Circuit demonstrates the correctness of this reading. In *Liquid Dynamics Corp. v. Vaughan Co.,* 355 F.3d 1361, 1363 (Fed. Cir.2004), the patentee claimed a storage tank for a slurry of waste products that could mix the liquid and solid parts of the slurry together. The claim required two "flow generating means" acting together to generate:

a **substantial helical flow path** of the liquid and solid components therein with the liquid and solid components traveling outwardly, across the tank floor from the center portion of the tank toward the tank wall and then upwardly along the tank outer surrounding wall to a first point and then inwardly along an upper portion of the body toward the

**5.** *See Saeilo, Inc. v. Colt's Mfg. Co.,* 26 Fed. Appx. 966, 970 (Fed.Cir.2002) (unpublished); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.,* 166 F.3d 1190, 1195 (Fed.Cir. 1999).

center of the tank and then downwardly toward the tank floor, and then outwardly to a second point spaced circumferentially in the direction of rotation of the entire body of liquid, the liquid and solid components continuing to travel in the helical path as the entire body of liquid and solid components continues to rotate.

*Id.* at 1364 (emphasis added). The plaintiff argued that the limitation meant "a largely or generally spiral-like flow path; a perfect helical path is not required," while the defendant argued that the claim required a very specific helical flow path. *Id.* at 1365. The district court adopted the more narrow interpretation based on the plain language of the claim and the patent figures. *Id.* at 1366. The Federal Circuit disagreed and held:

> The district court's analysis was erroneous because Claim 1 was not ambiguous, and its plain meaning was not contradicted by the written description. The plain language of phrase 2 requires a "substantial helical flow." The term "substantial" is a meaningful modifier implying "approximate," rather than "perfect." ... [W]ords of approximation, such as "generally" and "substantially," are descriptive terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter.
>
> Similarly, the plain language of Claim 1 requires neither a perfectly helical flow nor a flow that returns precisely to the center after one rotation (a limitation that arises only as a logical consequence of requiring a perfectly helical flow). ...
>
> The district court relied on the written description of Figures 5 and 6 to import the limitation of a perfectly helical flow. There is no language in the claim requiring such a perfectly helical flow. We have consistently warned against this approach to claim construc-

tion. Claim 1, properly construed, does not require a perfectly helical flow.

> **The district court here failed to differentiate between "helical" and "substantial helical."** Claim 1, as properly construed, claims all flow patterns that are generally, though not necessarily perfectly, spiral, and that fill much, though not necessarily all, of the tank's volume. This construction of the claim follows from the words "substantial helical flow" in phrase 2, the directional outline of phrase 3, and the words "substantially volume filling" in phrase 4.

*Id.* at 1368–69 (citations and quotation marks omitted; emphasis added).

Just as there is a difference between a "helical" flow path and a "substantial helical" flow path, there is a difference between a "translucent" housing and a "partially translucent" housing. Because claim 1 requires a "translucent housing," the "translucent" requirement applies to the housing as a whole and not to merely a portion. As previously stated, the specification and prosecution history are consistent with the ordinary meaning of "translucent housing" and establish that Taylor disclaimed a housing that is opaque with a translucent portion. Indeed, claim 1 originally required a translucent portion but the language to this effect was deleted to overcome a rejection leaving claim 1 with only a "translucent housing."

Finally, Taylor again argues that no prosecution disclaimer occurred because only the "translucent portion" language was amended and not "translucent housing." The prosecution history is clear, however, that the examiner rejected Taylor's claim with the "translucent portion" language but allowed the claim when Taylor more narrowly described the "translucent housing." Taylor's statements and amendments during prosecution clearly disclaimed a mirror assembly with "a

housing having a central longitudinal portion of a transparent or translucent element and a light source within the housing." '019 patent, col. 1, ll. 35–37. For the same reasons. Taylor is estopped from using the doctrine of equivalents to cover a housing that is only partially translucent.

### 3. Claim Construction of "Incident Light"

■ Taylor says that the Court erred in construing "incident light" according to its ordinary meaning to mean light that is coming from outside the housing toward the housing. Taylor does not offer another interpretation for the term but, for the first time, says that light from the sun or the flash of a camera is not "incident light." Taylor's expert, Dr. Alan T. McDonald, however, testified during his deposition that "incident light" meant light that is coming from outside the housing toward the housing. Further, this interpretation is consistent with the dictionary definition of "incident" as "Falling or striking upon or against; acting upon anything from without, esp. of light: Falling or striking upon a surface often in photographic contexts." Oxford English Dictionary (2d ed.1989), *available at OED Online* <http://dictionary.oed.com>. Taylor has not shown a palpable defect in the construction of "incident light."

### 4. Photographs

■ As support for the conclusion that the DCAG mirror assembly does not prevent incident light from passing through the wall and closed end as required by claim 1, the Court compared a photograph of the DCAG mirror assembly with the illuminating image forming means present (Exhibit 3) to a photograph of the DCAG mirror assembly with the illuminating image forming means removed (Exhibit 4). Because the photographs clearly do not have the same look, the DCAG mirror assembly does not prevent incident light

from passing through the housing. Taylor says that these photographs (which Taylor originally provided) are misleading and inconclusive because they are flash photographs. Taylor also submits another set of photographs taken without a flash that he says have the same look.

The photographs, however, merely confirm and reinforce the Court's own observation of the DCAG mirror assembly. Viewing an example DCAG mirror assembly provided by the parties, the illuminating image forming means is clearly not contained and concealed within the housing so that it is hidden from view. No reasonable jury could find otherwise. Further, as Dr. McDonald admits, light coming from outside the housing toward the housing passes through the lens, which is part of the wall at the closed end. Therefore, the DCAG mirror assembly does not prevent incident light from passing through the wall and closed end as required by claim 1.

### 5. "Translucent Plastic Piece With Circular Designs"

Taylor says that, contrary to the Court's finding, the "translucent plastic piece with circular designs" that is placed behind the translucent lens in the DCAG mirror assembly (Component C in Exhibit 1) is part of the housing not part of the illuminating image forming means. While acknowledging that the "translucent plastic piece with circular designs" can be seen through the translucent lens, Taylor says that the circuit board and LEDs cannot be seen from outside the housing.

Taylor, however, reads too much into the decision. The conclusion that the DCAG mirror assembly does not meet the "containing and concealing," "preventing incident light from passing therethrough," and "hidden from view" limitations was based on the undisputed fact that light coming from outside the housing toward

the housing passes through the translucent lens. A comparison of the photographs with and without the circuit board and LEDs, as well as the Court's own observation of the DCAG mirror assembly, supported this conclusion. In comparing the two photographs, the Court stated in its decision:

> Regardless of whether the "translucent plastic piece with circular designs" is part of the "housing" or part of the "illuminating image forming means" in the DCAG mirror assembly, though, Exhibits 3 and 4 are appropriate for comparison because at least part of the "illuminating image forming means" is present in Exhibit 3 and absent in Exhibit 4.[6]

Hence, because the DCAG mirror assembly clearly appears different when at least part of the illuminating image forming means was removed, it does not keep the illuminating image forming means contained, concealed, and hidden from view from outside the housing. As a result, the DCAG mirror assembly does not literally infringe claim 1.

### 6. Prosecution History Estoppel Relating to "Containing and Concealing," "Preventing Incident Light from Passing Therethrough," and "Hidden from View"

■ Taylor repeats his previous argument that the June 21, 1988 amendment adding the "containing and concealing," "preventing incident light from passing therethrough," and "hidden from view" limitations was not an unmistakable surrender of subject matter for claim coverage. As previously stated, the limitations were added to overcome Dawe (Great Britain Patent No. 271,917) and other references disclosing a glass cover placed over a stencil so that the light sources inside can be seen through the glass cover. As a

result, prosecution history estoppel applies and Taylor is estopped from claiming a housing allowing incident light to pass through and not containing and concealing the illuminating image forming means from view.

## IV.  Conclusion

Taylor has merely presented many of the same issues ruled upon by the Court previously. He has not demonstrated a palpable defect by which the Court and the parties have been misled. It is for this reason that his motion for reconsideration has been denied.

SO ORDERED.

---

**6.**  *See* Memorandum and Order, at 27–28 n. 14.