**Carl B. BAI, Plaintiff–Appellant,**

v.

**L & L WINGS, INC., d/b/a Wings, Defendant–Appellee,**

and

**Great World Co. of New York Ltd., and Elufa Fashions, Inc., Defendants.**

No. 98–1008.

United States Court of Appeals, Federal Circuit.

Nov. 3, 1998.

John E. Daniel, Rogers & Wells, of New York, New York, argued for plaintiff-appellant.

Allen I. Rubenstein, Gottlieb, Rackman & Reisman, P.C., of New York, New York, argued for defendants-appellees.

Before RICH, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Carl B. Bai appeals from the summary judgment of the United States District Court for the Southern District of New York that L & L Wings, Inc.'s MAGIC CATCH game does not infringe claim 1 of Bai's U.S. Patent 4,017,076. *See Bai v. L & L Wings, Inc.*, No. 95 Civ. 10824 (LMM), 1997 WL 527870 (S.D.N.Y. Aug. 22, 1997). Because we conclude that the district court properly granted summary judgment of noninfringement, we affirm.

## BACKGROUND

Bai is the inventor and owner of the '076 patent directed to a "target game." He asserted that Wings's MAGIC CATCH target game infringes claim 1 of his patent. MAGIC CATCH is similar to the invention of claim 1, but has one primary difference. While the patent discloses and claims a "hemispherical" glove as shown below,

FIG.2

the MAGIC CATCH's glove is saucer– or Frisbee ®–shaped. In other words, the plastic backside of the MAGIC CATCH glove is largely flat in the middle, but curved on the ends. At issue in this case is whether the limitation "hemispherical" excludes Wings's largely flat product.

The patent application as originally filed had the following three claims that are relevant here:

1. A target game including: a glove; a sheet of fabric material mounted on the glove and extending across the front face thereof to constitute a target for a missile thrown thereagainst.

2. The target game defined in claim 1, in which the glove is formed of a rigid plastic material and has a dish shape.

3. The target game defined in claim 2, in which the sheet of fabric material is mounted on the glove in spaced relationship therewith so as to present a resilient surface which is deflectable inwardly when struck by the missile.

The examiner rejected all the claims, particularly dependent claim 3, on obviousness grounds over a combination of four patents: Muchnick, U.S. Patent 3,953,030; Craig, U.S. Patent 1,633,926; Lemelson et al., U.S. Patent 3,857,566; and Hartel, U.S. Patent 3,378,-260. Specifically, the examiner stated that it would have been obvious to combine the dish-shaped structure disclosed in the Hartel patent with the "target" disclosed in the Lemelson patent, and that because the Lemelson target is hand-held, it is a kind of glove that can be substituted for the gloves disclosed in the Muchnick and Craig patents. In response, Bai canceled claims 2 and 3 and amended claim 1 to incorporate the claim 2 and 3 limitations and to add the limitation that the glove was "hemispherical."[1] Bai remarked that he was amending claim 1 to "specifically and expressly recite the structural details" of his invention, noting its "particular configuration." He distinguished the gloves disclosed in Muchnick and Craig as having different structures and functions from the amended claim, and distinguished the Lemelson target as not having a glove. Bai did not address the Hartel patent, but summarily stated that he believed the other references cited by the examiner were irrelevant. The examiner then allowed amended claim 1, which reads as follows:

1. A target game including: a glove formed of a *hemispherical* dish-shaped rigid plastic member, a strap mounted

---

1. Bai also amended the claim to add "a strap mounted on the rear side of the plastic member to enable the glove to be held," but this limitation is not at issue in the present appeal.

on the rear side of the plastic member to enable the glove to be held on the palm of the hand of a player; a sheet of fabric material mounted on the glove and extending across the front face of the dish-shaped rigid plastic member to constitute a target for a missile thrown thereagainst, said sheet of fabric material being mounted on the plastic member in spaced relationship with the inner surface thereof so as to present a resilient surface which is deflectable inwardly when struck by the missile.

(emphasis added).

Bai filed suit against Wings for patent infringement. The parties filed cross-motions for summary judgment on the question of infringement, focusing in their briefs on the term "hemispherical" and also addressing the prosecution history estoppel presumption established by the Supreme Court in *Warner–Jenkinson v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865 (1997). In its opinion, the district court construed the term "hemispherical" to include structures that are "less than a sphere, but . . . nevertheless, a part of a sphere," apparently because the glove pictured in Figure 2 is close to a hemispherical shape, although it is not exactly hemispherical. *See Bai*, 1997 WL 527870 at \*2. The district court concluded that the MAGIC CATCH's "perceptibly flattened surface" did not meet the claim limitation "hemispherical" and thus did not literally infringe claim 1. *Bai*, 1997 WL 527870 at \*2. The court also concluded that Bai added the term "hemispherical" in response to the § 103 rejection and that Bai did not establish that this amendment was unrelated to patentability. *See id.*, 1997 WL 527870 at \*4–\*5. The court thus concluded that prosecution history estoppel limited Bai to products that are hemispherical in shape, and accordingly held that MAGIC CATCH did not infringe claim 1 under the doctrine of equivalents. *See id.*, 1997 WL 527870 at \*5. This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

We review a district court's grant of summary judgment *de novo*. *See Conroy v. Ree-*
bok Int'l, Ltd., 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See id.* at 255, 106 S.Ct. 2505.

Determining whether a patent claim has been infringed involves two steps: (1) claim construction to determine the scope of the claims, followed by (2) determination whether the properly construed claim encompasses the accused structure. *See, e.g., Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 528, 41 USPQ2d 1001, 1004 (Fed.Cir.1996). The first step, claim construction, is a matter of law which this court reviews *de novo*. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455, 46 USPQ2d 1169, 1173 (Fed.Cir. 1998) (en banc). The second step, determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *See, e.g., North Am. Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1574, 28 USPQ2d 1333, 1335 (Fed.Cir.1993). Thus, a literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device. *See generally Cole*, 102 F.3d at 532, 41 USPQ2d at 1007 (defining literal infringement standard).

A claim of infringement under the doctrine of equivalents may be decided on summary judgment. As the Supreme Court recently stated:

where the evidence is such that no reasonable jury could determine two elements to

be equivalent, [the] district court [is] obliged to grant partial or complete summary judgment.... Of course, the various legal limitations on the application of the doctrine of equivalents are to be determined by the court.... [I]f prosecution history estoppel would apply or if a theory of equivalence would entirely vitiate a particular claim element, partial or complete summary judgment should be rendered by the court, as there would be no further material issue for the jury to resolve.

*Warner–Jenkinson,* 520 U.S. at —— n. 8, 117 S.Ct. at 1053 n. 8, 41 USPQ2d at 1875 n. 8 (1997). Furthermore, whether prosecution history estoppel applies to limit the doctrine of equivalents is a question of law that we review *de novo. See, e.g., Southwall Techs, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1579, 34 USPQ2d 1673, 1679 (Fed.Cir.1995). Thus, when deciding whether summary judgment of infringement under the doctrine of equivalents is proper, we may first determine whether prosecution history estoppel applies, *i.e.,* whether an aspect of the originally claimed subject matter was surrendered by the amendment and is thus outside the range of equivalents to which the patentee is entitled. *See, e.g., Wang Labs., Inc. v. Mitsubishi Elecs.,* 103 F.3d 1571, 1578, 41 USPQ2d 1263, 1269 (Fed.Cir.1997). If we conclude that prosecution history estoppel does not apply, we may then determine whether a reasonable jury could find that the accused device contains elements that are equivalent to each of the properly construed claim limitations. *See Warner–Jenkinson,* 520 U.S. at ——, 117 S.Ct. at 1049, 41 USPQ2d at 1871.

Appellant Bai does not essentially challenge the court's claim construction. The only issues the parties dispute are whether the district court improperly concluded that claim 1 does not encompass the MAGIC CATCH either literally or under the doctrine of equivalents.

■ Bai argues that the district court erred in granting summary judgment of no literal infringement. Bai maintains that the court adopted a construction of the term "hemispherical" that encompasses devices that are "concave and symmetrical about their center[s]," and that no reasonable jury could find that MAGIC CATCH was not so constructed. Wings responds that Bai mis-

quotes the district court's construction of the term "hemispherical," and that no reasonable jury could find that MAGIC CATCH literally infringed under the district court's construction.

We agree with Wings. While the court did quote Bai's description of the claimed glove as "concave and symmetrical about its center," the court did not adopt this language as part of its claim construction. *See Bai,* 1997 WL 527870 at *2 n. 3. Instead, the court clearly construed the term "hemispherical" to mean "less than a sphere, but nevertheless part of a sphere," a construction with which we do not disagree. In addition, it is clear from the record that no reasonable fact-finder could describe the shape of the MAGIC CATCH glove as "less than a sphere, but nevertheless part of a sphere." Although the MAGIC CATCH glove is round, it is uncontested that it is predominately flat with curved edges (like a saucer or a Frisbee ®) and is therefore in no sense hemispherical. Because no reasonable jury could find that the MAGIC CATCH literally meets the "hemispherical" limitation, we conclude that the district court correctly granted summary judgment of no literal infringement. *See Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 44 USPQ2d 1103 (Fed.Cir.1997).

Bai next argues that the district court erred in granting summary judgment of non-infringement under the doctrine of equivalents. Bai contends that MAGIC CATCH infringes the '076 patent under the doctrine of equivalents and that prosecution history estoppel does not apply. Bai maintains that he added the "hemispherical" limitation merely to clarify the structure of the invention. Bai argues in the alternative that the *Warner–Jenkinson* presumption does apply and was rebutted by a subsequent interference proceeding in which the interference examiner determined that the term "hemispherical" was immaterial to the count and thus unrelated to patentability.

Wings responds that Bai clearly added the term "hemispherical" to overcome the prior art rejection based on the Hartel reference, not for clarification. Wings argues that Bai could not have added that term for clarification because it actually misdescribes the preferred embodiment, which does not disclose a half-spherical glove. Wings contends that

the interference proceeding is not part of the prosecution history because the interference was terminated, and in any case would not effect the conclusion that Bai added the term "hemispherical" to overcome prior art, because the interference examiner never decided the scope of claim 1.

When determining whether prosecution history estoppel applies to limit the doctrine of equivalents, a court must examine the reason why an applicant amended a claim. *See Warner–Jenkinson,* 520 U.S. at ——, 117 S.Ct. at 1049, 137 L.Ed.2d 146, 41 USPQ2d at 1872. If such examination indicates that a patent applicant has made a substantive change to his claim that clearly responds to an examiner's rejection of that claim as unpatentable over prior art, prosecution history estoppel applies to that claim; only the question of the scope of the estoppel remains. No presumption needs to be applied in such a case because the reason for the amendment is clear. *Warner–Jenkinson* did not change this aspect of prosecution history estoppel. *See Warner–Jenkinson,* 520 U.S. at ——, 117 S.Ct. at 1049–50, 41 USPQ2d at 1871–72 (citing with approval five Supreme Court cases invoking prosecution history estoppel where the applicant narrowed his claims in order to overcome a prior art rejection).

What *Warner–Jenkinson* did address was the situation in which the prosecution history fails to disclose a reason for a claim amendment. In that case, the patent applicant responded to a prior art rejection by adding a pH range to his claim. Because the examiner cited prior art relevant to the higher, but not the lower, end of the range, the addition of the upper pH limit clearly responded to the prior art rejection, but the addition of the lower pH limit did not. Thus, the record did not disclose the reason for the addition of the lower pH limit. *See Warner–Jenkinson,* 520 U.S. at ——, 117 S.Ct. at 1050, 137 L.Ed.2d 146, 41 USPQ2d at 1872. The Court held that even in the absence of such a disclosed reason, it nonetheless should be presumed that the lower pH limit was included for a reason related to patentability and thus that prosecution history estoppel applied to that claim limitation unless the patentee could establish that the amendment was not related to patentability. *See id.,* 520

U.S. at ——, 117 S.Ct. at 1051, 41 USPQ2d at 1873. The meaning of the word "patentability" was not made clear, but the context of the court's discussion was patentability over the prior art.

In this case, the reason for the "hemispherical" amendment is clear from the record. The examiner made only one rejection; he stated that the prior art, specifically referring to the Hartel patent which discloses a dish-shaped glove, rendered obvious the combination of a target, a glove, and a dish shape. Bai responded, *inter alia,* by adding the limitation "hemispherical" to the glove element. Thus, the term "hemispherical" was clearly an attempt by Bai to differentiate his invention over the Hartel patent. That Bai did not specifically address the Hartel patent in his remarks to the examiner does not alter our conclusion because it is clear that the "hemispherical" limitation directly addressed the citation of this reference.

Bai's boilerplate remark to the examiner that he amended his claims to "specifically and expressly recite the structural details" of his invention does not affect our conclusion. Bai's assertion that this language somehow conveys to the examiner his intent to add the term "hemispherical" for clarity purposes is unpersuasive. There is no evidence, and Bai does not argue that there is such evidence, that clarity was a problem with his claims. There was no lack of clarity, and no rejection under Section 112. Prior art was the problem. Moreover, Bai's remark to the examiner that he amended his claim to recite a "particular configuration" buttresses our conclusion that the "hemispherical" amendment was a narrowing amendment that served to distinguish that "particular configuration" over the prior art. Because we conclude that the prosecution record clearly shows that the reason behind the addition of the "hemispherical" limitation was to overcome prior art, prosecution history estoppel conclusively applies. The *Warner–Jenkinson* presumption does not apply because the reason for amendment was readily apparent from the prosecution record. Consequently, Bai's arguments attempting to rebut the application of prosecution history estoppel are irrelevant to our analysis.

Bai's argument that the deletion of the term "hemispherical" from the interference

count indicates that the earlier insertion of that term into the claim was not made to overcome a rejection on the ground of unpatentability of the claim is also not persuasive. As indicated above, it is clear to us that the term "hemispherical" was inserted to overcome the prior art rejection. The subsequent action of the examiner in the interference did not undo that fact. It merely responded to the motion by the opposing party to broaden the count, not the claim, for purposes of the interference, presumably to enable the opponent to present proof of priority with respect · to subject matter broadly defined to encompass interfering subject matter, including that which was not hemispherical. The reformulation of the interference count was therefore not a determination that Bai's claim was allowable over the prior art without the term "hemispherical."

Bai also argues that the amendment could not have been made to overcome prior art because it was not necessary to overcome the prior art rejection. We disagree. It is now too late in the game for us to analyze whether Bai's addition of the term "hemispherical" was necessary to gain allowance of his claim. When an applicant disagrees with the examiner's prior art rejection and fails to prevail by argument, he has two choices: either to amend the claim or to appeal the rejection. He may not both make the amendment and then challenge its necessity in a subsequent infringement action on the allowed claim. Bai made his choice and amended the claim. *See Warner–Jenkinson,* 520 U.S. at —— n. 7, 117 S.Ct. 1040, 1051 n. 7, 41 USPQ2d at 1872–73 n. 7 ("We do not suggest that, where a change is made to overcome an objection based on the prior art, a court is free to review the correctness of that objection when deciding whether to apply prosecution history estoppel.... [S]uch concerns are properly addressed on direct appeal from the denial of a patent, and will not be revisited in an infringement action"). A patentee does not have a second chance to relitigate the merits of a prior art rejection that caused an amendment to be made to gain allowance of the claims. We therefore refuse to speculate as to whether the examiner would have found claim 1 to be allowable

over the prior art if Bai had not added the term "hemispherical" to the claim. Whether or not the "hemispherical" limitation was superfluous, the prosecution record clearly reveals that Bai made this amendment to overcome prior art. *See American Permahedge v. Barcana,* 105 F.3d 1441, 1446, 41 USPQ2d 1614, 1618 (Fed.Cir.1997) ("[C]lear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance, may create an estoppel.").

The remaining issue is the scope of estoppel. The district court concluded that prosecution history estoppel limited Bai to products that are hemispherical in shape, and held that MAGIC CATCH thus did not infringe claim 1. *See Bai,* 1997 WL 527870 at *5. We agree with the district court that MAGIC CATCH does not fall within any scope of equivalents to which Bai is entitled under the '076 patent. A patentee is estopped from recovering through equivalency that which was deemed unpatentable in view of prior art. *See Litton Sys., Inc. v. Honeywell, Inc.,* 140 F.3d 1449, 1462, 46 USPQ2d 1321, 1330 (Fed.Cir.1998). An applicant who responds to an examiner's prior art rejection by narrowing his claim cannot later assert that the surrendered subject matter is an equivalent of the amended limitation. *See id.* The saucer-shaped subject matter surrendered by insertion of the term "hemispherical" is precisely that which Bai needs to recover in order to encompass the MAGIC CATCH within the instant claim. Bai is thus estopped from asserting that MAGIC CATCH infringes under the doctrine of equivalents. Because prosecution history estoppel precludes Bai's application of the doctrine of equivalents, we affirm the district court's holding that the MAGIC CATCH does not infringe claim 1 of the '076 patent under that theory.

## CONCLUSION

Because the trial court properly granted summary judgment of noninfringement, we *AFFIRM.*