**Morris REESE, Plaintiff/Cross Defendant–Appellant,**

v.

**U.S. WEST, INC., U.S. West Dex, Inc., and U.S. West Communications, Inc., Defendants/Third Party Plaintiffs–Appellees,**

v.

**Nortel Networks Inc. (formerly known as Northern Telecom Inc.), Third Party Defendant/Cross Claimant–Appellee,**

**and**

**Lucent Technologies Inc., Third Party Defendant/Cross Claimant–Appellee.**

No. 02–1633.

United States Court of Appeals, Federal Circuit.

DECIDED: March 5, 2003.

Before LOURIE, SCHALL, and PROST, Circuit Judges.

## DECISION

LOURIE, Circuit Judge.

Morris Reese appeals from the decision of the United States District Court for the District of Colorado granting summary judgment of noninfringement on Reese's claim that U.S. West. Inc., U.S. West Dex, Inc., and U.S. West Communications, Inc. (collectively, "U.S.West") infringed Reese's U.S. Patent 5,619,561. *Reese v. U.S. West, Inc.*, No. 99–WM–773 (D.Colo. Aug. 29, 2002). For the reasons set forth below, we *affirm.*

## BACKGROUND

Mr. Reese is the sole inventor and owner of the '561 patent, which is directed to a method and apparatus for providing a combination of call waiting, caller identification, and three-way conferencing to users of a telephone system. '561 patent, col. 1, ll. 6–10. In a nutshell, Reese's invention operates when a first party, already engaged in a call with a second party, receives an incoming call from a third party. If the third party's caller identification data (referred to as the "DN") is publicly available, the first party's equipment displays that DN. Thereafter, the first party can form a three-way conference call among the first, second, and third parties by simply pressing a key. More particularly, the invention is defined by claim 1, which reads as follows:

1. A method of providing to a first party already engaged in a telephone conversation with a second party via a terminating central office a directory telephone number with a corresponding name (DN) of a calling third party wishing to converse with said first party and then, in response to a predetermined digit entered on a keypad of said first party apparatus while said first party is engaged in said telephone conversation with said second party, connecting said calling third party to said first and second parties for three way conversations between said first, second and third parties, comprising the steps of:

(a) said terminating central office, *in response to receiving said calling third party DN flagged as public* from an originating central office of said calling third party indicating that said DN is to be disclosed to said first party, *sending a call waiting tone signal to said first party;*

(b) said first party apparatus, in response to said call waiting tone signal,

muting its associated handset for a pre-determined interval of time;

(c) said first party apparatus also generating and transmitting an acknowledgment tone to said terminating central office;

(d) said terminating central office, in response to said acknowledgment tone, transmitting said DN of said calling third party to said first party apparatus during a silent interval of said call waiting tone signal cycle;

(e) said first party apparatus receiving and displaying said DN of said calling third party from said terminating central office during said silent interval of said call waiting tone signal cycle while said first party is engaged in said telephone conversation with said second party;

(f) said terminating central office determining whether a hookswitch flash has been detected on said first party loop due to said first party answering said calling third party call based on said calling third party identity;

(g) said terminating central office *determining whether a predetermined digit has been received* from said first party apparatus while said first party is engaged in said telephone conversation with said second party *if the hookswitch flash has not been detected* on said first party loop; and

(h) said terminating central office *connecting said calling third party to said first and second parties* for said three way conversations between said first, second and third parties *if the predetermined digit has been received* from said first party apparatus while said first party is engaged in said telephone conversation with said second party and that said received digit is a permitted digit.

*Id.* at col. 10, l. 32 to col. 11, l. 16 (emphases added).[1]

During prosecution, Reese amended claim 1 several times and argued for its allowance over U.S. Patent 5,263,084, issued to Chaput et al., and Japanese Patent Application 2–82619, in the name of Miyaji. The Examiner repeatedly rejected the claim as being obvious over Chaput, which disclosed a combination of call waiting and caller identification, in view of Miyaji, which disclosed a combination of call waiting and three-way conferencing. In the end, the Examiner allowed the claims on the bases that Chaput did not disclose generation of a call waiting tone "in response to receiving said calling third party DN flagged as public," as recited in step (a), and that Miyaji did not disclose initiation of three-way conferencing by depressing a predetermined digit without a hookswitch flash, as required by step (g).[2]

Reese sued U.S. West in the district court, asserting that its "Call Waiting Deluxe" ("CWD") service, which also provides its subscribers a combination of call waiting, caller identification, and three-way conferencing features, infringed the '561 patent. Like the invention, CWD operates when a first party, already engaged in a call with a second party, receives an incoming call from a third party. CWD displays the third party's DN in all cases, whether it is flagged as being public or

---

1. The '561 patent contains two claims, method claim 1 and apparatus claim 2, both of which are at issue in this case. Because the relevant limitations are the same in both claims, it is sufficient to consider only method claim 1.

2. A hookswitch flash is a brief depression of the on/off hook switch, which is the switch utilized to hang up a telephone, typically by placement of the handset on or over the switch.

not. Thereafter, the first party can form a three-way conference call among the first, second, and third parties, but doing so requires a hookswitch flash.

The court granted summary judgment of noninfringement to U.S. West on two grounds. First, the court construed step (a) "to mean that a call waiting tone is sent if—and only if – the third party DN is flagged as public," and CWD did not literally meet that limitation as so construed. *Reese,* slip op. at 7–8. The court further held that Reese was estopped by the prosecution history from asserting that CWD contained an equivalent to step (a). *Id.* at 9–10. Secondly, the court construed steps (g) and (h) to mean that the hookswitch must not be flashed when the first party wishes to conference the calls. *Id.* at 12. The court again found no literal infringement under its claim construction and held that the prosecution history estopped Reese from asserting infringement under the doctrine of equivalents. *Id.* at 12–13.

Reese, acting *pro se,* appeals from the decision of the district court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment *de novo,* reapplying the same standard used by the district court. *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

A determination of patent infringement requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted ... [Second,] the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed. Cir.1998) (en banc) (citations omitted). Step one, claim construction, is an issue of law, *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo, Cybor,* 138 F.3d at 1456, 46 USPQ2d at 1172. Step two, comparison of the claim to the accused device or method, requires a determination that every claim limitation or its equivalent is found in the accused device. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Those determinations are questions of fact. *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998). Whether a patent's prosecution history estops the patentee from invoking the doctrine of equivalents is a question of law, *Warner–Jenkinson,* 520 U.S. at 39 n. 8, that we review *de novo, Cybor,* 138 F.3d at 1460, 46 USPQ2d at 1178.

On appeal, Reese first argues that the court misconstrued step (a). More specifically, he contends that the ordinary meaning of that step is that the call waiting tone is sent on or after receipt of a DN flagged as public, and that neither the claim nor the specification specifies what might happen if the DN is not flagged as public. He also contends that the prosecution history does not compel a different construction. He further contends that the third party's DN is sometimes flagged as public in CWD, and that, in those instances, CWD meets the step (a) limitation literally. Finally as regards step (a), he argues that even under the district court's construc-

tion, CWD's indiscriminate transmission of a call waiting tone irrespective of the public status of the third party's DN is insubstantially different from step (a), and that he should be allowed to rely on the doctrine of equivalents because the amendment to step (a) was neither narrowing nor made for reasons relating to patentability.

We disagree with Reese's contention that the court misconstrued step (a). While there is some merit to his argument that neither the language of step (a) nor the '561 disclosure *per se* requires that the claimed method must be exclusive to those cases in which the DN is flagged as public, the prosecution history imparts that meaning to step (a). *See Tex. Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1202, 64 USPQ2d 1812, 1819 (Fed.Cir. 2002) ("[T]he presumption [that claim terms take their ordinary meaning] also will be rebutted if the inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."); *see also Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir.1995) ("[P]rosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."). Reese repeatedly distinguished his invention over Chaput on the basis that Chaput did not disclose sending a call waiting tone in response to DN information that is flagged as public. When the Examiner took the position that "Chaput inherently sends the CW [call waiting] tone for all calls (including flagged public)," Reese responded as follows: "[T]he sending of call waiting tone ... is dependent upon receiving the calling third party's directory telephone/name (DN) flagged as public.... Limitations such as this one, which is not disclosed in either of the cited references, must be given proper weight when deter-

mining patentability." Only then did the Examiner accept Reese's interpretation and allow claim 1, while continuing to reject other claims not reciting the "flagged as public" limitation. Reese thereafter cancelled those other claims, thereby acquiescing to the Examiner's position. *See Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1114–15, 62 USPQ2d 1564, 1569 (Fed.Cir.2002) (finding a rejected claim that was subsequently cancelled "most significant" to the disavowal issue). Moreover, Reese himself confirmed this understanding in an affidavit in another lawsuit involving the same '561 patent, in which he stated:

> In the system disclosed in the Belcore document, the user receives the call-waiting tone whether the information is flagged public or not. This is not the same as my invention. In my patent, a non-public DN may not be forwarded to the user. This is the precise reason that primary patent examiner Ahman [sic] Matar allowed the claims....

Aff. of Morris Reese at 4, *N. Telecom v. Reese*, No. 98–9591–GHX (C.D.Cal.1998).

Given the district court's correct construction of step (a), there is no genuine issue of material fact that CWD does not satisfy that limitation literally. Furthermore, Reese's remarks throughout the prosecution history estop him from asserting an equivalent in contradistinction to those remarks, which were necessary to convince the Examiner to allow the claims. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1350, 63 USPQ2d 1769, 1776 (Fed.Cir.2002). Reese's arguments that he did not surrender subject matter by the amendment he made to step (a) and that he therefore should not be estopped by that amendment are irrelevant to the argument-based estoppel that he has created. The effect of that argument-based estoppel is that he cannot now

argue that CWD's indiscriminate genera-
tion of a call waiting tone irrespective of
the public nature of the third party's DN
is equivalent to step (a) when he expressly
disavowed that interpretation during pros-
ecution.

Because step (a) is dispositive of the
patent infringement issue, we need not
review the district court's decision regard-
ing the hookswitch flash limitation in step
(g), a second independent ground for non-
infringement.[3]

The court did not err in construing the
claims of the '561 patent or finding nonin-
fringement. Accordingly, we affirm.

---

**3.** Moreover, Reese does not challenge the dis-
trict court's construction of the hookswitch
flash limitation in step (g). Thus, the mean-
ing of that limitation does not present a dis-
pute which we might reach in order to guide
future conduct relating to the '561 patent.