**STATE OF CALIFORNIA DEPART-MENT OF TRANSPORTATION, Plaintiff–Appellee,**

v.

**TYCOR WALLS, INC., Fred J. Nove, and Gerald F. Nove, Defendants–Appellants.**

No. 03–1475.

United States Court of Appeals, Federal Circuit.

July 15, 2004.

Paul J. Andre, Principal Attorney, Norbert Stahl, of Counsel, Perkins Coie, Menlo Park, CA, for Defendants–Appellants.

William L. Anthony, Jr., Principal Attorney, Orrick, Herrington, Menlo Park, CA, Lisa Marie Schull, Preston Gates & Ellis LLP, Thomas J. Klitgaard, Dillingham & Murphy, of Counsel, San Francisco, CA, Norman C. Hile, Pamela A. Stone, of Counsel, Orrick, Herring, Sacramento, CA, for Plaintiff–Appellee.

Before LOURIE, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

## DECISION

LOURIE, Circuit Judge.

Tycor Walls, Inc., Fred J. Nove, and Gerald F. Nove (collectively, "Tycor") appeal from the final decision of the United States District Court for the Eastern District of California entering summary judgment of noninfringement of United States Patent 6,036,405 in favor of the State of California Department of Transportation

("Caltrans"). *Cal. Dep't of Transp. v. Tycor Walls, Inc.*, No. Civ. S–02–0758 WBS DAD (E.D. Cal. June 3, 2003) (*"Summary Judgment Order"*). Because the court erred in its analysis of infringement under the doctrine of equivalents, we *vacate* and *remand*.

## BACKGROUND

Tycor owns the '405 patent, which is directed to a retaining wall system comprising vertically stacked cells that have interlocking "anchors." Each anchor has a "slot" for receiving an aligned anchor's "projecting integral member." Claim 1 recites a retaining wall system; it requires each anchor to be "formed in one piece with at least one integral member" and to be "formed with a slot into a bottom surface of the anchor for receiving the projecting integral member of an aligned anchor of an adjacent cell." Independent claim 18 recites "a one piece anchor" for use in a retaining wall system and similarly requires each anchor to have a "slot . . . for receiving the projecting integral member of an aligned anchor." Independent claim 29 recites a method for retaining soil; it too requires each anchor to be "formed in one piece . . . with at least one integral member" and to be "formed with a slot . . . for receiving the projecting member of an aligned anchor." Claims 6 and 23, which have not been asserted in this litigation, depend from claims 1 and 18, respectively, with the added limitation that each slot have "a lengthwise extension greater than a lengthwise extension of said projecting member."

In October 2001, Caltrans sought bids on a highway-widening project and published design plans for a plantable geosynthetic reinforced wall ("PGR wall"). The PGR wall consists of tiers of horizontal "stretchers" that are supported by stackable concrete "headers." Each header has

two circular holes on its top surface and two circular holes on its bottom surface. Steel pins are inserted into the circular holes to interlock adjacent headers.

Upon learning of Caltrans' design plans, Tycor notified Caltrans that it believed the PGR wall to be essentially identical to the retaining wall claimed in the '405 patent. Caltrans subsequently filed suit against Tycor in the United States District Court for the Eastern District of California, seeking a declaratory judgment that its PGR wall does not infringe the '405 patent. Tycor filed a counterclaim alleging infringement of claims 1–5, 7–15, 17–22, and 24–29. After holding a Markman hearing, the court issued an order construing the disputed claim terms. The court interpreted the term "slot" in claims 1, 18, and 29 to mean "a long and narrow opening." *Cal. Dep't of Transp. v. Tycor Walls, Inc.*, No. Civ. S–02–0758 WBS DAD, slip op. at 5–6 (E.D.Cal. Dec. 16, 2002) (*"Claim Construction Order"*). In addition, the court construed the phrase "anchor being formed in one piece with at least one integral member" in claim 1 (and similar phrases in claims 18 and 29) as referring to "an anchor that is joined together with at least one integral member as a single piece" where an "integral member" is "a member that rests on one anchor, but no other." *Id.* at 9–10.

In June 2003, the district court granted Caltrans' motion for summary judgment of noninfringement. First, the court held that there could be no literal infringement because, as Tycor conceded after the claim construction order, the accused PGR wall does not have either a slot or an anchor and integral member formed in one piece. *Summary Judgment Order*, slip op. at 5. Second, the court held that there could be no infringement under the doctrine of equivalents. The court began its equivalence analysis by identifying two functions

that the recited "slots" must perform: receiving the projecting integral member of an aligned anchor (the "reception function") and facilitating the sliding of an aligned anchor so as to permit the adjustment of wall angle (the "sliding function"). *Id.* at 6–7. Citing the language of claims 6 and 23, as well as the specification and the prosecution history, the court further determined that the sliding function is a central feature of the claimed invention. *Id.* at 9. The court then concluded as a matter of law that the accused PGR wall does not contain the functional equivalent of the recited slot because its hole-and-pin system does not permit sliding to adjust wall angle. *Id.* at 14–15. Accordingly, the court entered summary judgment of noninfringement in favor of Caltrans. *Id.* at 16.

Tycor timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment *de novo,* reapplying the same standard used by the district court. *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir.1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A determination of infringement requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted ... [and sec-

ond,] the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc) (citations omitted). Step one, claim construction, is a question of law, *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970–71 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo, Cybor,* 138 F.3d at 1456. Step two, comparison of the claims to the accused device, requires a determination that every claim limitation or its equivalent be found in the accused device. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Those determinations are questions of fact. *Bai v. L & L Wings Inc.,* 160 F.3d 1350, 1353 (Fed.Cir.1998).

On appeal, Tycor first argues that the district court erred in construing the term "slot" by reading the sliding function of dependent claims 6 and 23 into independent claims 1, 18, and 29. Tycor thus urges us to define the term "slot" to mean "an opening with a length dimension." Although we agree with Tycor that the sliding function should not be read into the independent claims, we conclude that the district court made no such error in its claim construction. The court construed the term "slot" to mean simply "a long and narrow opening." *Claim Construction Order,* slip op. at 5–6. Both the plain meaning of the claim language and the specification support that interpretation. The court did not, as Tycor suggests, construe the independent claims to require the slot to be longer than the projecting integral member so as to allow the member to slide. Rather, the court's references to the sliding function were made in the context of its analysis of infringement under the doctrine of equivalents, which we discuss below. We therefore uphold the dis-

trict court's construction of the term "slot" as meaning "a long and narrow opening."

■ Tycor next contends that the district court misconstrued the "anchor" limitations of claims 1, 18, and 29 by requiring the anchor and integral member to be one piece. We conclude, however, that the district court did not err in its claim construction. The claim language plainly requires the anchor and integral member to be a single piece: claim 1 refers to "each anchor being formed in one piece with at least one integral member"; claim 18 recites a "one piece anchor" comprising, *inter alia*, an integral member; and claim 29 refers to "each anchor being formed in one piece ... and formed with at least one integral member." Nothing in the specification or prosecution history contradicts that plain meaning. In fact, the patentee distinguished a prior art reference during prosecution by explaining that "[t]he independent claims have been amended to make it clear that each anchor in the claim is formed in one piece with what can be referred to as a locking member integral with the anchor."[1] We therefore adopt the district court's construction of the "anchor" limitations as requiring the anchor and the projecting integral member to be a single piece.

■ Having affirmed the district court's interpretations of the "slot" and "anchor" limitations, we agree with the district court (and Tycor does not contest) that the accused PGR wall does not literally infringe the '405 patent. We turn next to the question of infringement under the doctrine of equivalents. On this issue, we agree with Tycor that the district court erred in holding that the accused PGR wall does not contain the functional equivalent of a "slot" as claimed in the '405 patent because its hole-and-pin system does not permit sliding of the pins to adjust wall angle. As noted above, the district court began its equivalence analysis by identifying two functions that the recited slots must perform: receiving the projecting integral member of an aligned anchor and facilitating the sliding of an aligned anchor so as to permit the adjustment of wall angle. Although the court correctly identified the reception function of the slots—claims 1, 18, and 29 expressly provide that the slots are for "receiving the projecting integral member of an aligned anchor"—it erred in concluding that the slots must also be capable of performing the sliding function. The independent claims make no mention of the sliding function, and nothing in the written description portrays the sliding function as a central feature of the claimed invention. On the contrary, the written description refers to slots that permit the sliding of aligned anchors only in the context of describing the preferred embodiment.[2] *E.g.*, '405 patent, col. 1, l. 64 to col. 2, l. 2; *id.*, col. 3, ll. 26–30. Moreover, it appears that the district court improperly relied on dependent claims 6 and 23 in ascertaining the function of the slots recited in independent claims 1, 18, and 29. *See Summary Judgment Order*, slip op. at 6, 9, 11. Claims 6 and 23 specifically recite structure necessary to perform the sliding function—*i.e.*, "said slot has a lengthwise extension greater than a lengthwise extension of said projecting member"—but they may not be

1. Whether the amendments made to the "anchor" limitations during prosecution should preclude Tycor from asserting the doctrine of equivalents for those limitations is not before us. On remand, the district court may consider whether prosecution history estoppel applies.

2. The "prosecution history" statements cited by the district court are merely quotations from the written description in the corresponding provisional and PCT applications and, as such, do not alter our analysis. *See Summary Judgment Order*, slip op. at 13.

read to impose functional limitations on the claims from which they depend and which do not contain such limitations.

Based on our reading of the relevant claim language and the specification, we conclude that equivalents of the slots recited in claims 1, 18, and 29 need not perform the sliding function. Because the district court entered summary judgment of noninfringement based on the fact that the hole-and-pin system of the accused PGR wall does not facilitate sliding to adjust wall angle, we vacate that judgment and remand for further proceedings relating to infringement under the doctrine of equivalents. On remand, the court should determine whether the hole-and-pin system of the accused PGR wall performs substantially the same function in substantially the same way to achieve substantially the same result as the corresponding slot-and-anchor system in the asserted claims and whether the accused PGR wall is not insubstantially different from the claimed invention. *See Warner–Jenkinson*, 520 U.S. at 40, 117 S.Ct. 1040.

## CONCLUSION

For the foregoing reasons, we conclude that the district court erred in granting Caltrans' motion for summary judgment of noninfringement. Although we agree with the district court's construction of the "slot" and "anchor" limitations and with its conclusion that the accused PGR wall cannot literally infringe the '405 patent, we disagree with the court's analysis of infringement under the doctrine of equivalents. Accordingly, we vacate the summary judgment of noninfringement and remand for further consideration of infringement under the doctrine of equivalents.