NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1340

GLOBAL MAINTECH CORPORATION and GLOBAL MAINTECH, INC.,

Plaintiffs-Appellants,

v.

I/O CONCEPTS, INC.,

Defendant-Appellee.

_____

DECIDED:  May 2, 2006

_____

Before LOURIE, GAJARSA, and LINN, Circuit Judges.

LINN, Circuit Judge.

Global Maintech Corporation and Global Maintech, Inc. (collectively, "Global") appeal from the decision of the United States District Court for the District of Minnesota ("district court") granting the motion of I/O Concepts, Inc. ("I/O Concepts") for summary judgment of non-infringement of U.S. Patent Nos. 6,035,264, 6,044,393, 6,112,237, and 6,157,956 (collectively, "the patents-in-suit").  See Global Maintech Corp. v. I/O Concepts, Inc., No. 03-4184 (D. Minn. Mar. 7, 2005) ("Non-infringement Order").  Because the district court properly granted I/O Concepts' motion for summary judgment of non-infringement, we affirm.

## I. BACKGROUND

Global is the owner of record of the patents-in-suit, all of which relate to the monitoring and control of "heterogeneous computer systems." In particular, the patents-in-suit describe a process that translates signals sent by dissimilar host computer systems, each of which effectively speaks different languages, to either a common message signal format or a universal character set that is understood by a monitoring and control computer. Non-infringement Order, slip op. at 1-2. If the implemented procedures result in control signals that must be sent to a host computer, the monitoring and control computer translates the control signal from the common message signal format or universal character set to the message signal format of that host computer. Id., slip op. at 2.

The patent applications that issued as the '237 patent, the '393 patent, and the '264 patent were all filed on November 26, 1997. All three patents include identical drawings and describe the same computer monitoring and controlling system. The only differences between the patents lie in the claimed subject matter. Specifically, the claims of the '237 patent are directed to the monitoring aspects of the monitoring and controlling system, while the claims of the '393 patent are directed to the control aspect of the system. The claims of the '264 patent are also directed to the monitoring aspect of the system, but are more limited in scope and coverage in that they relate specifically to automation using a script language. Id., slip op. at 2-3.

The United States Patent and Trademark Office ("PTO") initially rejected each of the applications that resulted in these three patents because the claims were anticipated and/or obvious. To gain issuance of the patents, Global amended each

independent claim of the three patents to clarify that they were limited to the external monitoring and controlling of "heterogeneous computer systems." Ultimately, these patents were issued in March and August 2000.

The '956 patent application was filed on March 28, 1977. Like the other three patents, the '956 patent relates exclusively to the monitoring and controlling of "heterogeneous computer systems." The '956 patent has three independent claims, each of which specifically relates to performing operations using a "universal character set" in "heterogeneous computer systems." In addition, certain claims of the '956 patent also require the presence of an "intelligent card" that translates data into a "universal character set."

I/O Concepts markets three software programs: Console Consolidation System, CCS/SmartClient, and Websession. In 2003, Global sued I/O Concepts for infringement of the patents-in-suit. On December 6, 2004, both Global and I/O Concepts filed competing motions for summary judgment. I/O Concepts filed three motions for summary judgment relating to (1) non-infringement of the '264, '393, and '237 patents; (2) invalidity of the '264, '393, and '237 patents; and (3) non-infringement of the '956 patent. Global filed a motion for partial summary judgment, which sought dismissal of all of I/O Concepts' affirmative defenses and counterclaims.

On March 7, 2005, the district court issued a Memorandum and Order relating to the four pending summary judgment motions. The district court construed the "heterogeneous computer system" limitation, which appears in all the asserted claims, as a system in which at least two host computers use different operating systems. The district court granted summary judgment of non-infringement, concluding that there was

no evidence that any I/O Concepts' product simultaneously monitors and controls multiple mainframes using different operating systems. The district court concluded that Global had failed to create a dispute of fact as to whether I/O Concepts sold or offered for sale a product that literally infringed the patents-in-suit. The district court denied, as moot, all the remaining motions for summary judgment.

On March 7, 2005, the district court entered final judgment. Global Maintech Corp. v. I/O Concepts, Inc., No. 03-4184 (D. Minn. Mar. 7, 2005). Global timely appeals to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.  ANALYSIS

### A.  Standard of Review

"We review a district court's grant of summary judgment de novo." Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1307 (Fed. Cir. 1998). If there are no material facts in dispute precluding summary judgment, "our task is to determine whether the judgment granted is correct as a matter of law." Marathon Oil Co. v. United States, 177 F.3d 1331, 1337 (Fed. Cir. 1999).

Claim construction is an issue of law, see Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996), that we

review de novo. See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); Phillips v. AWH Corp., 415 F.3d 1303, 1328 (Fed. Cir. 2005) (en banc).  Infringement is a question of fact.  See Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).

## B. Discussion

On appeal, Global argues that the district court erred in construing "heterogeneous computer system" too narrowly, and argues that the proper construction should be "computer systems having dissimilar processors and/or operating systems." Global further argues that the district court erred in including "simultaneous," which is not present in any claim, as a claim limitation.  Global argues that the district court erred in determining that I/O Concepts did not make, offer to sell, or sell its products for heterogeneous use.  Finally, Global argues that the district court erred in requiring the presence of an "intelligent card" in the method claims of the '956 patent.

I/O Concepts responds that the district court correctly construed the "heterogeneous computer system" limitation.  I/O Concepts further contends that the terms "simultaneously" and "simultaneous" were not used by the district court as words of limitation, but rather as explanatory terms describing how a person skilled in the art would understand the phrase "heterogeneous computer system."  Finally, I/O Concepts argues that the district court did not err in granting summary judgment of non-infringement because Global failed to make any showing regarding whether I/O Concepts' products monitor and/or control anything other than homogeneous computer systems.

Because we conclude that the district court correctly construed the "homogeneous computer systems" limitation, and because summary judgment of non-infringement was proper on that basis, we do not consider Global's argument relating to the presence of "intelligent card" in the '956 method claims.

### 1. Claim construction

The claim limitation disputed by the parties is "heterogeneous computer system," and the primary issue is whether it should be restricted to encompass only systems in which at least two host computers use a different operating system as the district court held. In determining the meaning of the disputed claim limitation, we look primarily to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence. See Phillips v. AWH Corp., 415 F.3d 1303, 1312-1317 (Fed. Cir. 2005) (en banc). Each of the asserted claims includes the "heterogeneous computer systems" limitation, but the claims do not provide guidance on what that limitation means. While the written description does not expressly define the disputed limitation, it lists examples of the monitored computer system. Specifically, the specification of the '237 patent states that

> The computer system, which is to be monitored, may take many forms. For example, the computer system may be a data center, an enterprise computing system, a network of computers, a mainframe computer, a mini-computer, a server, a workstation, and/or a personal computer. Alternatively, the computer system may be an MVS operating system-based computer (or one of its derivative like IBM's OS/390), a UNIX operating system-based computer, an IBM AS400 computer, a Microsoft Windows operating system-based computer, an Apple Macintosh operating system-based computer, an OS/2 operating system-based computer, or a DOS-based computer.

'237 patent, col. 46, l. 62-col. 47, l. 6. Contrary to Global's assertions, the first portion of the cited text does not set forth computer systems with different hardware. Rather, it merely lists different forms of computer systems. The second portion of the text, however, distinguishes computer systems running different operating systems. Thus, the written description supports the conclusion that one of ordinary skill in the art would understand "heterogeneous computer systems" to refer to systems in which at least two host computers use a different operating system. Nowhere does the written description disclose or describe the context of the claimed invention in broader terms.

The prosecution history is consistent with the conclusion noted above. As the district court observed, the "heterogeneous computer system" limitation was added during prosecution in response to rejection of the claims over the prior art. In distinguishing over the prior art, the prosecuting attorney explained that "Any monitoring features performed by [Windows] NT are not with respect to heterogeneous computer systems. For example, [Windows] NT has no facility to monitor operational processes (as provided on the system console) in a VMS and MVS system." In other words, the prosecuting attorney clarified that the prior art did not encompass monitoring host computers with different operating systems, such as a VMS and MVS system. Additionally, during prosecution of the '264 patent, the prosecuting attorney stated that "the language of the claim has been clarified to indicate that the system of the claimed invention controls the operating systems of the heterogeneous computers." Thus, the prosecution history supports the district court's conclusion that the "heterogeneous computer systems" are restricted in scope to encompass only systems in which at least two host computers use different operating systems.

Global contests the district court's reliance on expert testimony in its claim construction ruling. Specifically, the district court noted that Global's own expert "expressly defined a 'heterogeneous computer system' as one that simultaneously controls multiple computers that use different operating systems." Non-infringement Order, slip op. at 8. In Phillips, we reaffirmed that "extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless it is considered in the context of the intrinsic evidence." 415 F.3d at 1319. Here, the district court considered the context of the intrinsic evidence and properly relied on the extrinsic evidence merely to support the conclusion reached on claim construction from the claims, the written description, and the prosecution history. We discern no error in the district court's analysis.

We disagree with Global's contention that the district court improperly imposed a "simultaneous" requirement in its claim construction. Indeed, we commend the district court for its thorough, careful, and precise analysis in this technically complex case. Recognizing that the two host computers are unable to communicate directly with each other because they speak different languages, the district court explained that "the monitoring and control computer must understand and speak the language of both host computers[, and thus] it simultaneously translates between the host computers." Non-infringement Order, slip op. at 9. The district court's use of the word "simultaneous" merely clarifies and explains a characteristic inherent in its claim construction of "heterogeneous computer systems," and does not further limit the claims.

## 2. Non-infringement

The district court granted summary judgment of non-infringement based on its conclusion that Global failed to present sufficient evidence to create a dispute of fact relating to whether I/O Concepts' products monitor and control "heterogeneous computer systems." Specifically, the district court concluded that Global failed to present evidence relating to the sale by I/O Concepts of any infringing product to AIG or to any offer to sell, within the meaning of 35 U.S.C. § 271(a), of any infringing product by I/O Concepts. See Non-infringement Order, slip op. at 9-13.

Without pointing to any specific errors by the district court, Global contends on appeal that "Appellants have raised an issue of fact relating to the sale of Appellee's infringing product to AIG." The district court considered the evidence presented, including the testimony of an AIG representative who testified that, after remedying some initial problems, "AIG now uses I/O Concepts to manage and control both MVS and VM operating systems." Non-infringement Order, slip op. at 10. The district court also excluded portions of an affidavit of John Kaster as inadmissible hearsay, and Global does not challenge that evidentiary ruling. The district court noted that the record merely indicated that "AIG uses one CCS system to monitor and control computers running on the MVS operating system, and another CCS system to monitor and control computers using the VM operating system." Id., slip op. at 10-11. We agree with the district court that the cumulative evidence submitted by Global is insufficient to create a dispute of fact as to whether I/O Concepts has sold a product that controls and monitors "heterogeneous computer systems," as required by all the

05-1340                                    9

asserted claims.  Thus, the district court did not err in granting summary judgment of non-infringement.

## III.  CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment of non-infringement is affirmed.